**RANGER FUEL CORPORATION,**
**Appellee,**

v.

**The YOUGHIOGHENY AND OHIO**
**COAL COMPANY, Appellant.**

**No. 81-1084.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1981.

Decided March 25, 1982.

John F. Kay, Jr., Richmond, Va. (Susan C. Armstrong, David G. Shuford, Mays, Valentine, Davenport & Moore, Richmond, Va., Stephen A. Weber, Kay, Casto & Chaney, Charleston, W. Va., John C. Kinder, Edward K. Cheffy, Kinder, Kinder & Hanlon, St. Clairsville, Ohio, on brief), for appellant.

W. Warren Upton, Charleston, W. Va. (Charles Q. Gage, Paige Auer Winck, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for appellee.

Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and BUTZNER, Circuit Judge.

BUTZNER, Circuit Judge:

The Youghiogheny and Ohio Coal Company (Y&O) appeals from an order of the district court requiring it to arbitrate certain disputes with the Ranger Fuel Corporation. We reverse the order of the district court and remand with instructions to dismiss the action.

I

Y&O and the Bellemead Coal Company jointly own the mineral rights to 7,000 acres of land in West Virginia.[1] Y&O is the sole

---

1. The fraction owned by each differs from place to place and from coal seam to coal seam, but those differences are not relevant for our purposes.

owner of the rights to an additional 24,000 acres. The two companies leased the combined 31,000 acres to Ranger for 20 years, with agreements that Ranger would mine the area and pay royalties on the coal produced.

The lease contained a provision for the arbitration of disagreements. Disagreements did arise—whether covered by the arbitration clause we do not decide—and Y&O and Bellemead eventually sued Ranger in an Ohio state court.[2] About two weeks later, Ranger brought this action against only Y&O in the United States District Court for the Southern District of West Virginia, asking the court to stay the Ohio suit and compel Y&O to arbitrate its claims. Ranger relied on the Federal Arbitration Act,[3] specifically 9 U.S.C. § 4,[4] as the basis for its petition.

Recognizing that the Arbitration Act does not provide an independent jurisdictional basis, Ranger relied on diversity of citizenship under 28 U.S.C. § 1332(a). Y&O is an Ohio corporation; Ranger is a West Virginia corporation; and Bellemead, the omitted party, is also a West Virginia corporation.[5]

At a hearing in the district court, Y&O raised a number of jurisdictional, procedural, and substantive defenses to Ranger's action. Rejecting all of Y&O's contentions, the court held that it had jurisdiction and that Bellemead was not an indispensible party. It ordered Y&O to arbitrate with Ranger all but one of the claims pending before the Ohio court and to refrain from further proceedings in Ohio until the arbitration was complete.[6] The judge also stayed his order for a short time to afford Bellemead an opportunity to intervene. Bellemead, however, did not exercise this option.

## II

Bellemead's status is central to the jurisdictional issues which this appeal raises. Bellemead and Y&O are co-lessors to Ranger of jointly owned mineral interests. All three companies are parties to the same lease. But for the destruction of diversity jurisdiction, Bellemead satisfies in every respect the requirements of Rule of Civil Procedure 19(a) for feasible joinder. *See Harrell and Sumner Contracting Co. v. Peabody Peterson Co.*, 546 F.2d 1227, 1228–29 (5th Cir. 1977).

The Arbitration Act states that the district court can enforce an agreement to arbitrate if, save for the agreement, the court "would have jurisdiction under Title 28 . . . of the subject matter of a suit arising out of the controversy between the parties . . ." 9 U.S.C. § 4. The district court identified the controversey at hand as counts one through eight of the Ohio action brought by both Y&O and Bellemead against Ranger, and this finding is not clearly erroneous. These counts include allegations that Ranger has breached its obligations to both Bellemead and Y&O. Inasmuch as Bellemead and Ranger are both West Virginia corporations, the district court would not have had jurisdiction under Title 28 of the subject matter of the controversy concerning the lease because of a lack of diversity. *See Shields v. Barrow*, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1855). Conse-

2. Ranger's parent corporation, the Pittston Company, was also a defendant in the Ohio action. For simplicity, we refer only to Ranger throughout the opinion.

3. 61 Stat. 670, ch. 392 (July 30, 1947), *codified at* 9 U.S.C. §§ 1–14.

4. Section 4 states in part:
   A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

5. Ranger brought suit in a West Virginia state court against Bellemead to compel arbitration of the Ohio claims.

6. An antitrust claim was found by the court not to be arbitrable. Y&O was, nevertheless, enjoined from proceeding in Ohio until the other claims were arbitrated.

quently, the limitation expressed in 9 U.S.C. § 4 prohibits the district court from compelling arbitration.

Ranger insists, however, that the dispute over arbitration is the critical controversy and that this question must be adjudicated independently of the allegations of the Ohio suit. We are not persuaded that the distinction Ranger suggests justifies a different analysis of this appeal. Nevertheless, we will briefly examine Ranger's approach to the question of jurisdiction.

This aspect of the jurisdictional question is governed by rule 19(b). Because Bellemead cannot be joined without destroying diversity jurisdiction, the district court was required to determine, as provided by the text of the rule, "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." The four factors prescribed by the rule for making this judgment must be considered in the light of the pragmatic effect of the alternatives of proceeding or dismissing. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 116–17 n.12, 88 S.Ct. 733, 741 n.12, 19 L.Ed.2d 936 (1968).

The rule's first factor is "to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties." Although Bellemead is not bound by the express terms of the district court's order prohibiting Y&O from litigating in Ohio, the practical effect of the injunction places restrictions on Bellemead's otherwise unfettered right to try this case with Y&O's assistance and support. Moreover, in view of the complex nature of the underlying controversy, it is conceivable that the Ohio court and an arbitrator might differ in their interpretations of the same contractual clauses that govern the rights of Y&O and Bellemead. Therefore, we conclude that the district court's order prejudicially affects both Y&O and Bellemead by multiplying procedures that might lead to inconsistent results.

The second factor specified by the rule is "the extent to which, by protective provision in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided." Ranger asserts that the district judge dissipated whatever prejudice Bellemead suffered by permitting it to intervene. The difficulty in Ranger's argument is two-fold. The district judge did not offer Bellemead the option to intervene until after he had ruled in favor of Ranger. Thus, as an intervenor, Bellemead would be hard pressed to protect itself. There is no indication in the record that the court intended to reopen consideration of the merits of the case if Bellemead intervened. From all that appears, Bellemead could reasonably anticipate that it would be governed by the prior rulings of the court should it voluntarily intervene. The second reason for questioning Ranger's argument is the destruction of jurisdiction caused by the intervention of a non-diverse, indispensable party.[7] Of course, if a court properly

---

**7.** The interplay between intervention and jurisdiction in this situation is explained in 7A Wright & Miller, Federal Practice and Procedure, § 1917 at 601–02:

> To this general principle [ancillary jurisdiction] there is one long-established exception. A person who should have been joined in the first instance because he is so related to the action that he is regarded as "indispensable" cannot intervene if his joinder will deprive the court of jurisdiction over the subject matter of the action. The action must be dismissed, as Rule 19(b) requires, if the court concludes that he is so related to the action that he is indispensable. For this reason the courts, in considering an application for intervention by one whose joinder would defeat diversity or otherwise destroy jurisdic-

tion, will examine his relation to the action and allow him in only if he otherwise meets the tests of Rule 24(a)(2) and they are able to conclude that he was not an indispensable party to the original action. This presents something of an anomaly. The whole theory of ancillary jurisdiction is that it allows the court to go beyond the case immediately before it and to deal with other persons and matters that are closely related to it. Yet if the absentee is so closely related to the main action that "in equity and good conscience" the action should not proceed without him, the ancillary concept cannot be invoked. The reason for the anomaly is that "a contrary view would provide an easy means to evade diversity jurisdictional requirements." (brackets added, footnotes omitted)

decides that the intervenor is not indispensable, intervention will not destroy jurisdiction.[8] But this decision must be made independently of the court's offer to allow intervention. In short, if Bellemead was indispensable when the action was filed, its character did not change simply because the court offered it the option to intervene.

The third factor is "whether a judgment rendered in the person's absence will be adequate." In this case, the judgment is inadequate. Ranger complained that both Y&O and Bellemead breached the parties' agreement to arbitrate by filing suit in Ohio. But the judgment does not prevent Bellemead from attempting to pursue the Ohio action. True, future motions for relief may characterize Bellemead as bound because its position as a co-lessor demonstrates that it is acting in concert with Y&O. The possibility of future litigation on this issue simply emphasizes the inadequacy of the judgment as it is now written. Also, Ranger, who claims to be entitled to the arbitration of its difference with both Y&O and Bellemead, can only arbitrate with Y&O under the terms of the judgment. If it is to arbitrate with Bellemead, it must secure an order either in Ohio or West Virginia. This proliferation of litigation also demonstrates the inadequacy of the judgment. See Doty v. St. Mary Parish Land Co., 598 F.2d 885, 888 (5th Cir. 1979).

The fourth factor is, in this case, the most compelling. It is "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder." By simply supplementing its pleadings, Ranger can seek to compel arbitration against both co-lessors, Y&O and Bellemead, in the actions that are pending in both Ohio and West Virginia. Ranger has pled the arbitration clause of the lease as a defense in Ohio, and it has brought an action against Bellemead in West Virginia, where Y&O appears to be subject to process. Both states provide for the enforcement of agreements to arbitrate, and Ranger has cited no deficiencies that make the state laws less effective for Ranger's purposes than the federal Act. Conse-

quently, there is no need to proliferate litigation over the question of arbitration by this action in federal court.

In sum, without Bellemead the district court could not compel arbitration pursuant to 9 U.S.C. § 4, for it would not have had jurisdiction to adjudicate the underlying controversy that is the subject of the suit brought by Y&O and Bellemead against Ranger in Ohio. We also conclude that whether Bellemead's status be tested by the underlying controversy that is the subject of the Ohio suit or by the petition for arbitration and stay of the Ohio litigation that is the subject of the federal action, Bellemead is an indispensable party. The federal action, therefore, should be dismissed because the joinder of Bellemead would destroy diversity.

The judgment of the district court is reversed, and the case is remanded with directions to dismiss Ranger's action, without prejudice, however, to its attempt to compel arbitration in another forum.

8. See 7A Wright & Miller, Federal Practice and    Procedure § 1917 at 603–04.