Mattie STAPLES, Plaintiff,

v.

THE MONEY TREE, INC.,
et al., Defendants.

Civil Action No. 95–T–667–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Aug. 22, 1996.

John A. Tinney, Roanoke, AL, for plaintiff.

Rodney Earl Nolen, Sirote & Permutt, Birmingham, AL, Marvin L. Stewart, Jr., Rachel Jackson Moore, Najjar & Denaburg, P.C., Birmingham, AL, and Robert William Bradford, Jr., Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Mattie Staples originally filed this lawsuit in state court charging defendants The Money Tree, Inc., First Colonial Insurance Company, American Heritage Insurance Company, and Interstate Motor Club with fraud in the sale of insurance in connection with a loan secured by an automobile. The defendants removed this lawsuit to federal court based on diversity-of-citizenship jurisdiction. 28 U.S.C.A. §§ 1332, 1441(a). Pending before the court is a motion by Money Tree to compel arbitration and stay judicial proceedings pursuant to the Federal Arbitration Act (FAA), as amended, 9 U.S.C.A. §§ 1–16. First Colonial and American Heritage have joined in the motion.[1] For the reasons that follow, the motion will be granted.

### I. BACKGROUND

● In July 1994, Staples entered into a loan agreement with Money Tree with her automobile serving as security. As a part of the agreement, Money Tree sold her an American Heritage life insurance policy, an American Heritage disability policy, a First Colonial single-interest automobile insurance policy, and an Interstate Motor Club policy.

● In October 1994, Staples's automobile was "totaled." Money Tree told Staples that, as a result of the accident, the loan had been paid off by the insurance, and Money Tree returned the car's title to her.

1. Interstate Motor Club has not joined in the motion. Therefore, this litigation shall proceed as to Interstate Motor Club.

2. The "Pre–Dispute Arbitration Agreement" clause provides, in pertinent part, as follows: "ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN CREDITOR AND DEBTOR ARISING OUT OF OR IN CONNECTION WITH THE WITHIN AGREEMENT AS TO THE EXISTENCE, CONSTRUCTION, PERFORMANCE, ENFORCEMENT OR BREACH THEREOF SHALL BE SUBMITTED TO ARBITRATION PURSUANT TO THE PROCEDURES UNDER THE FOLLOWING PRE–DISPUTE ARBITRATION AGREEMENT:
(A) ANY DISPUTE, CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO

● In April 1995, Staples filed suit in the Circuit Court of Randolph County, Alabama. She charged that Money Tree had fraudulently failed to advise her that, in addition to the repayment of her loan, she was entitled to partial refunds of the premiums she had paid for the insurance policies with American Heritage, First Colonial, and Interstate Motor. She sued American Heritage, First Colonial, and Interstate Motor on the theory that, in committing these frauds, Money Tree was acting as their agent.

● Money Tree, First Colonial, and American Heritage responded to Staples's complaint with the pending motion to compel arbitration and stay judicial proceedings. They rely on a "Pre–Dispute Arbitration Agreement" clause in the loan agreement between Staples and Money Tree.[2]

### II. DISCUSSION

Staples argues that the motion should be denied because: first, the FAA does not apply to the underlying transaction in this case; and, second, even if arbitration may be compelled with respect to Money Tree, there is no agreement to arbitrate between Staples and the other two defendants, First Colonial and American Heritage. The court will address each argument in turn.

### A. Applicability of the FAA

■ The FAA makes enforceable a written arbitration provision in "a contract evidencing a transaction involving commerce."

THIS CONTRACT, OR THE BREACH THEREOF, SHALL BE SETTLED BY ARBITRATION IN THE STATE OF ALABAMA IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE 'ARBITRATION RULES OF THE AAA'), AND JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY
(b) The parties anticipate that the funds to be provided under this Agreement will come from sources outside the State of Alabama. Therefore, Creditor and Debtor acknowledge and agree that the Contract involves 'commerce' as defined in the United States Arbitration Act, Title VIII, United States Code, 'Arbitration,' hereinafter referred to as the 'USAA.' "

9 U.S.C.A. § 2.[3] The FAA defines "commerce" as "commerce among the several states." 9 U.S.C.A. § 1.[4] Thus, the question in this case is whether the transaction at issue is one "involving commerce" within the meaning of the FAA.

In *Allied–Bruce Terminix Companies, Inc. v. Dobson,* — U.S. —, —, 115 S.Ct. 834, 841, 130 L.Ed.2d 753 (1995), the United States Supreme Court instructed that "the word 'involving' . . . signals an intent to exercise Congress's commerce power to the full," and that the phrase " 'evidencing a transaction' mean[s] only that the transaction . . . turn[s] out, in fact, to have involved interstate commerce." [5] In the contract between Staples and Money Tree, this requirement has been met for two reasons.

First and most significantly, the contract between Staples and Money Tree expressly provides that, "Creditor and Debtor acknowledge and agree that the Contract involves 'commerce' as defined in the United States Arbitration Act." [6] In *Volt Info. Sciences v. Bd. of Trustees,* 489 U.S. 468, 479, 109 S.Ct. 1248, 1256, 103 L.Ed.2d 488 (1989), the Supreme Court wrote that courts should " 'rigorously enforce' [arbitration] agreements according to their terms." Because "[a]rbitration under the Act is a matter of consent, not coercion," 489 U.S. at 479, 109 S.Ct. at 1256, and because "parties are generally free to structure their arbitration agreements as they see fit," *id.,* courts must "give effect to the contractual rights and expectations of the parties." *Id.* The Court explained that "the FAA's primary purpose" is "ensuring that private agreements to arbitrate are enforced according to their terms." *Id.* at 478, 109 S.Ct. at 1255. Here, because Staples and Money Tree have stipulated that the contract between them involves interstate commerce within the meaning of the FAA, the court must, and will, enforce the stipulation and apply the FAA to the arbitration agreement contained in the contract.

■ Second, even in the absence of the stipulation, the agreement between Staples and Money Tree would still fall within the reach of the FAA. Admittedly, as Staples observes, she dealt solely with Money Tree's Roanoke office in procuring the loan, she received loan proceeds in Alabama, she made payments to the Roanoke office, and no documents that she signed mentioned any address for Money Tree other than an Alabama address. However, this is only half the picture. The evidence before the court also reflects the following: Money Tree is a Georgia corporation; although Staples's loan was negotiated in Alabama, all loans, including hers, were approved from a centralized loan approver in Georgia; although Staples signed her note in Alabama, all original loan notes, including hers, were produced in and shipped from Georgia; the loan proceeds were wired from Georgia and then disbursed to Staples in Alabama; all supplies for the Alabama Money Tree office were shipped from Georgia; and all loan documents were printed in Georgia. The transaction between Staples and Money Tree was one "involving commerce" within the meaning of the FAA. *See, e.g., Williams v. Katten, Muchin & Zavis,* 837 F.Supp. 1430 (N.D.Ill.1993); *Pioneer Properties, Inc. v. Martin,* 557 F.Supp. 1354

---

3. Section 2 provides:

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

4. Section 1 provides, in part, that " 'commerce', as herein defined, means commerce among the several States or with foreign nations, or in any

Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

5. In *Allied–Bruce,* the Supreme Court rejected Alabama's "contemplation of the parties" test, and held that the "commerce in fact" test "is more faithful to the [FAA]." — U.S. at —, 115 S.Ct. at 840.

6. *See supra* note 2.

(D.Kan.1993); *First Citizens Municipal Corp. v. Pershing Div. of Donaldson, Lufkin & Jenrette Securities Corp.*, 546 F.Supp. 884 (N.D.Ga.1982).

### B. Applicability of Arbitration Clause to First Colonial and American Heritage

■ Staples next argues that, even if the arbitration clause is binding as to Money Tree, she made no similar agreement with First Colonial and American Heritage. First of all, the arbitration agreement between Staples and Money Tree is applicable to First Colonial and American Heritage under the theory of "equitable estoppel." In *McBro Planning and Development v. Triangle Electrical Construction Co.*, 741 F.2d 342 (11th Cir.1984), McBro Planning and Triangle Electrical had entered into separate contracts with a hospital relating to a construction project. Although both contracts had arbitration clauses, there was no contract, or arbitration clause, between McBro Planning and Triangle Electrical. A dispute arose between the two, and McBro Planning moved to compel arbitration. The Eleventh Circuit Court of Appeals held that Triangle Electrical was equitably estopped from asserting that the lack of a written agreement between itself and McBro Planning barred arbitration where the dispute between the two was "intimately founded in and intertwined with the underlying contract obligations." *Id.* at 344 (quoting *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 841 n. 9 (7th Cir.1981)). *Cf. Morrie Mages and Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402, 407 (7th Cir. 1990) (although a guarantor was not a party to an arbitration agreement between a debtor and a creditor, the FAA entitled the guarantor to a stay of the creditor's action against it where the dispute between the creditor and debtor had been submitted to arbitration; the guarantor was a party to litigation involving issues subject to the arbitration agreement, and resolution of the issue of whether and how much the guarantor was liable was completely dependent upon arbitrable issues of fact and the extent of the debtor's liability); *Sam Reisfeld & Son Import Company v. S.A. Eteco*, 530 F.2d 679,

681 (5th Cir.1976) (judicial proceedings could be stayed as to defendants who were not signatory to arbitration agreement where charges against these two defendants were based on the same operative facts and were inherently inseparable from the claims against the [signatory defendant]; otherwise, "the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted").

Later, in *Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753 (11th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994), another case involving the enforcement of an arbitration agreement by nonsignatories, the party opposing arbitration attempted to distinguish *McBro Planning* by the fact that the nonsignatories in that case were expressly mentioned in the contracts at issue. The Eleventh Circuit found that "the reference to a third party was neither a crucial nor dispositive factor in either case." *Id.* at 757.

In her complaint, Staples claims that Money Tree has fraudulently failed to advise her that, in addition to the repayment of her loan, she was entitled to partial refunds of the premiums she had paid for the insurance policies with First Colonial and American Heritage. She has included First Colonial and American Heritage essentially on the theory that Money Tree was their front in committing these frauds. Therefore, her claims against First Colonial and American Heritage are derivative of, and predicated on, her claims against Money Tree; if she has no claim against Money Tree, she has no claim against First Colonial and American Heritage. With these allegations, the court must conclude that Staples's claims against First Colonial and American Heritage are "intimately founded in and intertwined with the underlying contract obligations," *McBro Planning*, 741 F.2d at 344 (quoting *Hughes Masonry*, 659 F.2d at 841 n. 9), with Money Tree and that therefore Staples is equitably estopped from asserting that the lack of a written agreement with respect to the nonsignatory defendants First Colonial and American Heritage bars arbitration between Staples and these other defendants.

In any event, First Colonial and American Heritage are entitled to arbitration under the laws of "agency." In *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110, 1121 (3rd Cir.1993), the Third Circuit Court of Appeals held that "because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." That a principal and an agent should both be bound to an arbitration agreement entered into by one of them becomes even more evident when the charges against the principal and its agent are based on the same facts and are inherently inseparable. As discussed earlier, Staples asserts in her complaint that Money Tree acted as an agent for First Colonial and American Heritage at various stages of the dealings between Money Tree and Staples. Thus, the court again concludes that First Colonial and American Heritage are covered under the arbitration agreement entered into between Staples and Money Tree.