TRANSOUTH FINANCIAL
CORPORATION, et
al., Plaintiffs,

v.

Ronald A. BELL, Defendant.

Civil Action No. 96–T–1747–N.

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 25, 1997.

John Fairley McDonald, III, Copeland, Franco, Screws & Gill, P.A., Montgomery, AL, for plaintiffs.

Paul R. Cooper, Darron C. Hendley, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

■ This case, commenced with a petition to compel arbitration and for a stay of state-court proceedings, presents the narrow but difficult question of whether this federal lawsuit should be dismissed in favor of the state lawsuit, the answer for which lies at the intersection of two federal laws, the Federal Arbitration Act, 9 U.S.C.A. §§ 1–16, and the Federal Anti–Injunction Act, 28 U.S.C.A. § 2283, and the doctrine announced by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Because adequate and complete relief is available in state court but not federal court, this court holds, based on these two federal laws and the *Colorado River* doctrine, that this federal lawsuit should be dismissed, albeit without prejudice.

## I. BACKGROUND

Ronald A. Bell filed a lawsuit in the state circuit court of Lowndes County, Alabama, on October 4, 1996, against the following defendants: TranSouth Financial Corpora-

tion, Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc., all foreign corporations; S.J. Conner Auto Sales, an Alabama resident corporation; and Carl Knight, Jay Conner, and other Alabama residents alleged to be the agents of those corporations. Bell, who took out a series of loans from TranSouth over a period spanning several years, charged these state defendants with various acts of fraudulent misrepresentation and suppression or concealment of material facts in connection with their lending procedures and sale of credit insurance, as well as negligent hiring of the agents who handled his loans.

The foreign corporations filed notices of appearance as defendants in the state-court action, along with a motion to stay the proceedings, which that court has not yet ruled on. Because complete diversity of citizenship between Bell and all state defendants was lacking, 28 U.S.C.A. § 1332, and since no other independent basis for federal jurisdiction over that action exists, removal to federal court, 28 U.S.C.A. §§ 1441, 1446, was impossible. Instead, the foreign corporations alone filed an original action in this federal court against Bell on November 25, 1996, seeking orders, under the Federal Arbitration Act, staying the state-court litigation pursuant to 9 U.S.C.A. § 3,[1] and compelling Bell to arbitrate the claims comprising that state-court action pursuant to 9 U.S.C.A. § 4.[2] Invoking this court's diversity-of-citizenship jurisdiction, 28 U.S.C.A. § 1332, they argue that the final loan transaction between TranSouth and Bell included a broad and thoroughgoing arbitration clause covering the entirety of Bell's complaint against all parties.

Bell answered the complaint of the foreign corporations and on February 14, 1997, moved to dismiss the petition to compel arbitration, raising five main arguments in opposition to it.[3] First, Bell contends that this court should abstain from retaining jurisdiction and instead defer to the state court's prior exercise of jurisdiction over this matter, and should not permit would-be federal plaintiffs to 'end run' removal requirements in this manner. Second, Bell maintains that the Federal Anti–Injunction Act does not permit this court to enjoin the state court from proceeding with this action. Third, Bell argues that the Arbitration Act grants no authority to this court to stay the state-court action or hear the petition to compel arbitration. Fourth, Bell considers the remaining state-court parties indispensable parties who could not be joined in this action. Finally, Bell takes the position that the arbitration agreement does not govern this dispute and was fraudulently obtained.

Bell's motion to dismiss is now before the court.

## II. ABSTENTION, COMITY, AND DEFERRAL

Bell contends that, under the doctrine established in *Colorado River*, princi-

---

**1.** Section 3 provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

**2.** In pertinent part, § 4 provides:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

**3.** Strangely, Bell subsequently filed a counterclaim, asserting that he was fraudulently misled about the scope of the arbitration agreement he signed in conjunction with his most recent loan refinancing, to which federal plaintiffs responded by moving to dismiss or, alternatively, to compel arbitration of the counterclaim. These pleadings and motions are not relevant to the issue of jurisdiction now before the court.

ples of federal-state comity and wise judicial administration dictate that this court yield jurisdiction to the state court. "Principles of comity suggest that a court having jurisdiction over all matters in dispute should have jurisdiction of the case." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1173 (11th Cir.1982). Because all the issues, including the merits of the underlying state suit and the dispute between Bell and the resident and non-resident defendants to that suit, are properly before the state court, whereas this court has only the parties to the petition to compel arbitration before it, and because "state courts, as well as federal courts, have jurisdiction over federal arbitration," *id.*, this court, Bell argues, should abstain or defer. Here, as in *Haydu*, "[a]ddditionally, the state court had prior jurisdiction, and convenience of the parties was served just as easily in the state court as in the federal court.... In short, federalism concerns require that a federal court tread lightly when a state proceeding is already underway." *Id. Accord Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176 (11th Cir.1981).

The foreign corporations point out, quite correctly, that the governing analysis of deference and abstention by a federal court, for reasons of comity and wise judicial administration, where parallel litigation is proceeding in state court, as laid out in *Colorado River*, and refined in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (which was decided after *Haydu* ), favors dismissal of a federal action only in "exceptional circumstances." *Colorado River*, 424 U.S. at 818, 96 S.Ct. at 1246. But the factors considered relevant to the decision to dismiss are not "hard-and-fast"; instead, they must be carefully assessed and balanced. *Moses H. Cone*, 460 U.S. at 15–16, 103 S.Ct. at 936–37. These factors include, for example, priority of jurisdiction; which court has jurisdiction over a *res;* the relative inconvenience of the state and federal fora; which court is best-positioned to afford complete relief; the de-

sirability of avoiding piecemeal litigation and, related to that, the severability of the state and federal claims and parties; and others. *Id.*[4] The Supreme Court also repeatedly focused on the policies underlying the arbitration act: economy and efficiency. *See generally id.; Snap–On Tools Corp. v. Mason*, 18 F.3d 1261 (5th Cir.1994).

Examining the case at hand through the lens of these factors, the state court may be a slightly more convenient forum, and Bell, as the plaintiff, was certainly entitled to sue in the venue where all intended defendants could be joined. The state court had prior jurisdiction, and to the extent this federal action has already proceeded further than the action in state court, it is primarily through the initiative of the foreign corporations, wishing to avoid that forum by filing the parallel action here. Although weighing somewhat in favor of dismissal, these factors alone are not so compelling, on the facts presented, as to present the kind of exceptional circumstances that support dismissal on the basis of wise judicial administration and comity.

Another important factor, however, is piecemeal litigation and severability. If the federal court can handle all the claims among the parties, there is no danger. If the federal court and state court must handle severable parts of the action in piecemeal fashion, the danger is present, but not disastrous. However, if the claims are not easily severable, and yet both courts must become involved, particularly to afford injunctive relief, the danger looms large. The foreign corporations seem to believe that this court could, and in fact must, provide comprehensive relief, by ordering Bell to arbitrate his disputes with them as well as with the remaining state defendants, even though the latter are not, and could not be made, parties to this petition. Furthermore, they believe this court should stay the state-court action to effectuate that relief.

However, this court is not in a position to grant the foreign corporations either of these

---

4. The Supreme Court in *Moses H. Cone* also gave weight to the federalization of the law of arbitrability; however, the Court recognized that such a source-of-law consideration has little force when state and federal courts have coextensive obligations to apply and enforce the federal law. 460 U.S. at 25, 103 S.Ct. at 942.

forms of relief, and thus, were this court to hear the petition to compel arbitration between the parties presently before it, further proceedings in state court would be required to resolve the status of the remaining state defendants under the arbitration agreement in question and to decide whether to stay the underlying action in light of this court's actions. This would result not only in piecemeal, but potentially duplicative or conflicting litigation.

To show why the court cannot grant all the forms of relief the foreign corporations are seeking demands a closer look at the Anti–Injunction Act, the structure of the Arbitration Act itself, and the dictates of Rule 19 of the Federal Rules of Civil Procedure. Without the full panoply of relief the foreign corporations are seeking, the dangers of piecemeal litigation on issues not easily severable, combined with the fact that the state court would still be best-positioned to afford full relief, weigh so heavily in favor of the state court's exercise of jurisdiction as to constitute exceptional circumstances under the *Colorado River* doctrine.

### III. ANTI-INJUNCTION ACT

The foreign corporations are here asking for an injunction staying the state-court proceedings. The Anti–Injunction Act states that "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C.A. § 2283.

The Anti–Injunction Act's "purpose is to prevent use of Federal jurisdiction for the purpose of staying or interfering with proceedings currently pending in the state courts." *Drexler v. Walters*, 290 F.Supp. 150, 156 (D.Minn.1968). "On its face the [Anti–Injunction] Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions. [the Act does not simply represent] a 'principle of comity' ... [whereby] in certain circum-

stances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions." *Atlantic Coast Line R. Co. v. Brotherhood of Loc. Engs.*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). These three exceptions "should not be enlarged by loose statutory construction." *Id.; accord Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582 (11th Cir.1983) (because of sensitive nature of federal interference with state court litigation, exceptions to rule against injunctions, including the 'protection of judgments' exception, which applies to relitigation of claims that threaten federal court's judgment, must be narrowly construed); *see also Bluefield Community Hosp., Inc. v. Anziulewicz*, 737 F.2d 405, 408 (4th Cir.1984) (exceptions to the statute should be narrowly construed and any doubts as to propriety of federal injunction against a state court proceeding should be resolved in favor of permitting the state court to proceed); *International Ass'n of Machinists and Aerospace Workers v. Nix*, 512 F.2d 125, 129 (5th Cir.1975) (sensitive nature of federal interference with state court proceedings requires that § 2283 be strictly construed).[5]

#### A. Authorized by Congress

■ The first question is whether there is any express congressional authorization in the Federal Arbitration Act for federal courts to issue injunctions of state-court proceedings. Authority to issue a stay of judicial proceedings pending arbitration is found in § 3 of the act, which states that, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration ... the court in which such suit is pending ... [shall] stay the trial of the action until such arbitration has been had." 28 U.S.C.A. § 3. The Supreme Court has explained this provision as follows: " § 3 ... limits the federal courts to the extent that a federal court cannot stay a suit pending *before it* unless there is such a suit in existence." *Moses H. Cone*, 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32 (emphasis added) (internal citation omitted). In read-

---

**5.** In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

ing § 3 and this language from *Moses H. Cone*, it is critical to keep in mind that a suit on a substantive issue is not the same as a petition to arbitrate the substantive issue in that suit. In other words, there are two issues: first, the underlying substantive issue, and, second, the issue of whether that substantive issue is arbitrable. With this understanding, § 3, therefore, appears to provide that "the court in which [the substantive] suit is pending" is the only one that can, and should, stay the trial of the action; only when both issues (the underlying substantive issue and the arbitrability issue) are before the same court (arguably a federal court) does it appear that § 3 applies.

Here, the underlying fraud claims are the issues upon which suit was brought, and these issues were presented to the state court, so that is the court where the suit is pending, and which has the power (if a state court has such power), under § 3, to stay the trial of those claims. *See, e.g., Ultracashmere*, 664 F.2d at 1180 (§ 3 does not authorize federal courts to stay proceedings pending in state courts; such authority must be found in the Anti–Injunction Act); *McGuire, Cornwell & Blakey v. Grider*, 765 F.Supp. 1048, 1052 (D.Co.1991) (§ 3 of the Arbitration Act inapplicable where party petitions court to stay proceeding in another court). The first exception to the Anti–Injunction Act therefore does not apply.

## B. Effectuate Judgments

 The 'protection of judgments' exception applies to relitigation of claims that would threaten a federal court's judgment. *Delta Air Lines, Inc. v. McCoy Restaurants, Inc.*, 708 F.2d 582 (11th Cir.1983). An injunction staying the state-court suit by Bell could not be properly issued as a means to protect or effectuate a judgment of this court, as none has been entered. The court is not tempted to put the cart before the horse by first deciding the arbitrability question, and then strapping an injunction onto that decision. There is no support in *Atlantic Coast* for a loose construction of the Anti–Injunction Act that would permit a court to stay the hand of a state court that has already assumed jurisdiction over a controversy, in order to protect its own free hand to *eventually* reach judgment on a matter just brought before it. "It is clear that this [exception] does not permit a federal court to enjoin state proceedings to ·protect a judgment that the federal court may make in the future but has not yet made." C. Wright, A. Miller & E. Cooper, 17 Fed.Prac. & Proc. § 4226 at 345 (1978). *See Laker Airways v. Sabena, Belgian World Airlines*, 731 F.2d 909, 929 n. 59 (D.C.Cir.1984) (quoting Wright, Miller & Cooper); *Bruce v. Martin*, 724 F.Supp. 124, 131 n. 11 (S.D.N.Y.1989); *cf. Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir.1990) (where a federal court has already made conclusive rulings and their effect may be undermined by threatened relitigation in state courts, the exception may be appropriate). In other words, this exception to the Anti–Injunction Act empowers a federal court, which has issued an immediately appealable ruling containing directives with preclusive effects on state as well as federal courts, to prevent state courts from entertaining any suit that would interfere with those directives. *Atlantic Coast*, 398 U.S. at 288–291, 90 S.Ct. at 1744–45; *see, e.g., Hunt v. Mobil Oil Corp.*, 557 F.Supp. 368 (S.D.N.Y.), *aff'd*, 742 F.2d 1438 (2d Cir. 1983).[6] For example, had Bell filed a tort

---

**6.** Cases holding the contrary, namely that an exception to the Anti–Injunction Act is justified where a court sees the possibility of inconsistent results and seeks prospectively to protect its own decree, either rely on precedent that predates and does not conform with *Atlantic Coast, see, e.g., Network Cinema Corp. v. Glassburn*, 357 F.Supp. 169, 171 (S.D.N.Y.1973); *Blount Bros. Corp. v. M.K. Steel, Inc.*, 524 F.Supp. 1037 (N.D.Ala.1981); *McGuire, Cornwell & Blakey v. Grider*, 765 F.Supp. 1048 (D.Colo.1991); *Snap–On Tools Corp. v. Vetter*, 838 F.Supp. 468 (D.Mont.1993), or express concerns about state courts not following federal arbitration law and

dishonoring arbitration agreements, which concerns should by now be laid to rest by *Moses H. Cone, Southland Corp. v. Keating*, 465 U.S. 1, 15–16, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1 (1984), and *Allied–Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 270–74, 115 S.Ct. 834, 838–39, 130 L.Ed.2d 753 (1995), which make abundantly clear that state courts must equally honor federal law, which favors arbitration.

Certain cases rely solely on the *Colorado River* factors, without considering the Anti–Injunction Act, and so are also not entirely helpful as prece-

action against the foreign corporations in state court after the issuance of a federal order compelling arbitration, the federal court could stay the state court action under the Anti–Injunction Act. Although the foreign corporations here may not have been able to anticipate being sued for fraud, and thus were unlikely to be in a position to file an action in federal court to protect their contractual right to arbitrate, before being served with papers in the state court action, there is no unfairness in this fate. Certainly, where a borrower has failed to meet loan obligations, the lenders may file a § 4 petition in federal court, putting them in a position to seek a stay of any state court action the borrower may later initiate. Not all cases must conform to the same profile or follow the same path through the courts.

■ Again, the purpose of the 'protection of judgments' exception is to prevent relitigation in state courts of matters already decided in federal court. *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir.1993) ('relitigation' exception is essentially *res judicata* concept designed to prevent issues that have already been tried in federal court from being relitigated in state court), *cert. denied,* 510 U.S. 1046, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994); *Delta Air Lines,* 708 F.2d at 585–86. This exception is therefore inappropriate when the federal court is first being asked to exercise jurisdiction over a matter that could just as easily proceed, and in fact has already begun, in state court. As courts have pointed out time and time again, a party seeking to protect its right to arbitrate under the Arbitration Act should look primarily to the state courts. *Moses H. Cone,* 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32 ("[E]nforcement of the Act is left in large part to the state courts.").

### C. In Aid of Jurisdiction

■ Finally, the exception for an injunction necessary in aid of a federal court's

jurisdiction "implies something akin to the concept of injunctions to 'protect or effectuate judgments.'" *Atlantic Coast,* 398 U.S. at 294, 90 S.Ct. at 1747. "[I]f the District Court does have jurisdiction, it is not enough that the requested injunction is related to that jurisdiction, but it must be 'necessary in aid of' that jurisdiction." *Id.* at 295, 90 S.Ct. at 1747. Traditionally, this exception was thought to apply primarily to *in rem* cases. *Vendo Co. v. Lektro–Vend Corp.,* 433 U.S. 623, 641, 97 S.Ct. 2881, 2892, 53 L.Ed.2d 1009 (1977). Beyond that, it is very difficult to distinguish situations in which this exception solely applies.

### D. Equity

■ In any case, even where the power to apply these exceptions exists, the usual equitable tests for an injunction apply.[7] The state-court action must threaten a party with immediate irreparable injury sufficient to justify an injunction under usual equitable principles; if, further, that party would be unable to obtain relief through the state appellate process, then relief in the federal courts, particularly the Supreme Court, which has broad appellate jurisdiction over final state court decisions, and questions of federal law, might be appropriate. *Atlantic Coast,* 398 U.S. at 295, 90 S.Ct. at 1747; *Ultracashmere,* 664 F.2d at 1181; *Lamb Enters., Inc. v. Kiroff,* 549 F.2d 1052, 1061–62 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977). But "lower federal courts possess no power whatever to sit in direct review of state court decisions." *Atlantic Coast,* 398 U.S. at 296, 90 S.Ct. at 1748. The foreign corporations have demonstrated no threat to their rights here. On the contrary, they elected not to pursue their contractual arbitration rights in the state court, though nothing and no one prevented them from doing so.

---

dents. *See, e.g., A.L. Williams & Assocs., Inc. v. McMahon,* 697 F.Supp. 488, 494 (N.D.Ga.1988).

7. More generally, the fact that any of the § 2283 exceptions might apply does not "qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct.

2151, 2162, 32 L.Ed.2d 705 (1972). That is why this court's analysis of the Anti–Injunction Act and the Arbitration Act proceeds within the overall structure of the *Colorado River* abstention doctrine. *See also Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Haydu,* 482 F.Supp. 788, 792 (D.Fla.1980), *rev'd on other grounds,* 637 F.2d 391 (5th Cir.1981).

In short, both the 'protection of judgment' and 'aid of jurisdiction' "exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id.* If these exceptions could apply even where, arguably, a state-court action had commenced on valid jurisdictional grounds, with full relief available, the dual nature of the federalist court system would be toppled—the federal courts would always trump the state courts where both have bases for jurisdiction over a suit.[8] As noted, that result also would run directly contrary to Congress's purpose, by not including an independent basis for subject-matter jurisdiction in the Arbitration Act, of affording relief primarily through the state court system.

## IV. JURISDICTION UNDER THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act does not itself create any independent federal question jurisdiction. *Moses H. Cone,* 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32. As the Supreme Court has pointed out, "§ 4 [of the Federal Arbitration Act] provides for an order compelling arbitration only when the federal court would have jurisdiction over a suit on the underlying dispute; hence there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." *Id.*

To grant a petition to compel arbitration, the court must therefore both have jurisdiction over a controversy, so that it is properly before the court to decide, and then satisfy itself that the controversy is 'arbitrable'—that is, referable to arbitration, because there is a valid written agreement to arbi-

trate reaching the issues and the parties to the dispute. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cohen,* 62 F.3d 381, 383–84 (11th Cir.1995).

Bell asks the court to read § 4 as a jurisdictional statement: namely, that the phrase "would have jurisdiction ... of the subject-matter of a suit arising out of the controversy between the parties," means that the Arbitration Act requires that, to entertain the petition to compel arbitration, the district court "have jurisdiction over a suit on the *underlying* dispute," *Moses H. Cone,* 460 U.S. at 25 n. 32, 103 S.Ct. at 942 n. 32. When the underlying suit, according to Bell, is an actual suit brought in state court, then unless the district court could properly assert jurisdiction over that suit (that is, it could be removed), the district court cannot hear the motion to compel arbitration. This reading appears straightforward, and has been literally construed and followed by some courts, *see, e.g., Dean Witter Reynolds, Inc. v. Espada,* 959 F.Supp. 73 (D.P.R. 1997) (jurisdiction because underlying suit premised on the Securities and Exchange Act, 15 U.S.C.A. § 78); *Gouger v. Bear, Stearns & Co., Inc.,* 823 F.Supp. 282, 285 (E.D.Pa.1993) (same) Many courts, however, have decided that jurisdiction cannot be found by looking beyond the petition to the underlying claims that the party being sued asserts are subject to arbitration. Despite the existence of "tension between those decisions and the comment by the Supreme Court in *Moses [H. Cone]* ... speculation over the meaning of this footnote and the arcane language of [§ 4] will not prevail over the uniform body of authority that has been building on this issue." *Kaplan v. Dean Witter Reynolds, Inc.,* 896 F.Supp. 1219, 1219 (S.D.Fla.1995).[9] *See also Westmoreland Capital Corp. v. Findlay,* 100 F.3d 263 (2d Cir.1996); *Prudential–Bache*

---

8. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed.... [T]he fundamental principle of a dual system of courts leads inevitably to that conclusion." *Atlantic Coast,* 398 U.S. at 297, 90 S.Ct. at 1748. *Accord Vendo Co.,* 433 U.S. at 630–31, 97 S.Ct. at 2887.

9. Moreover, the Supreme Court has made clear that "it [is] generally undesirable, where holdings of the Court are not at issue, to dissect the sentences of the United States Reports as though they were the United States Code." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993).

*Sec., Inc. v. Fitch*, 966 F.2d 981 (5th Cir. 1993); *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103 (7th Cir.1996); *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F.Supp. 957 (S.D.N.Y.1988) (literal reading of § 4 as jurisdictional statement would produce anomalous and bizarre inconsistencies within Federal Arbitration Act as a whole).

The crucial question is whether diversity jurisdiction should also be predicated solely on the allegations present on the face of the federal complaint as well, without regard to the parties named in an underlying state-court suit. There is some authority that this should be the case, at least when all the parties to the agreement that is allegedly subject to arbitration are named in the federal-court petition. *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996).[10] Here, as in *Distajo*, the residual state-court defendants, as agents of defendants that are party to, or named in, the contract containing the arbitration clause, need not be named in the petition to compel arbitration, and thus do not defeat diversity.[11]

The court concludes, therefore, contrary to the assertions of Bell, that it at least has jurisdiction to hear the petition to compel arbitration under § 4 of the Federal Arbitration Act.

## V. EXERCISING JURISDICTION

Whether that jurisdiction should be exercised is a broader question that still requires a careful weighing of all the other *Colorado River* factors, for the foreign corporations have not shown authority in the Arbitration Act itself for defendants in a state suit, who are unable to remove that suit to federal court, to select, from among themselves, just those parties that are in complete diversity with the plaintiff, file a parallel action in federal court, and then seek orders and injunctions from the federal court that would be binding upon the residual state-court defendants and the state court itself.[12] The foreign corporations here are confident that disputes between Bell and their own agents and employees in Alabama are governed by the arbitration clause between Bell and Tran-South (to the same extent disputes between Bell and Associates Financial Life Insurance Company, Associates Insurance Company, and Associates Financial Services Company, Inc., are), and wish this court to rule in their favor on that point. They are, in essence, covertly trying to include the remaining state defendants as parties by virtue of their being within the scope of the arbitration agreement the foreign corporations claim is the 'controversy' between the parties, while denying their party-status for purposes of maintaining full diversity in this federal suit. That will not do.

Although, in applying the *Colorado River* doctrine, *Moses H. Cone* sanctioned federal court enforcement of arbitration agreements "notwithstanding the presence of other persons who are parties to the underlying [state court] dispute but not to the arbitration agreement," 460 U.S. at 20, 103 S.Ct. at 939; *Distajo*, 66 F.3d at 446, the Supreme Court's

---

**10.** *Distajo* also favors the policy argument that "the [Federal Arbitration Act] would be fatally undermined if 'the parties' described in § 4 could be expanded to include persons who had not signed the arbitration clause but who allegedly were involved in the 'underlying controversy,'" because then "a party resisting arbitration could defeat federal jurisdiction simply by suing someone from the same state, plus the party seeking to compel arbitration, in a separate state lawsuit." *See supra* note 2. However, plaintiffs have the right to choose which forum they wish to bring suit in, and so long as there is no fraudulent misjoinder of parties, because state courts have the same obligation to honor the Federal Arbitration Act as do federal courts, *Terminix*, 513 U.S. 265, 270–74, 115 S.Ct. 834, 838–

39, 130 L.Ed.2d 753, this court fails to see any substance to this policy.

**11.** However, these agents, despite not being parties to the arbitration agreement, nonetheless might be indispensable parties for other reasons, as discussed below in Part VI.

**12.** In this case, both actions are necessary, since the disputes with the residual state-court defendants are said to be covered by the arbitration agreement. An order compelling arbitration would not suffice unless the state-court action could be stayed, to avoid inconsistent results and obligations, *Ultracashmere*, 664 F.2d at 1182 n. 13, and internecine conflict between the dual court systems.

comfort with that result was tied to the fact that the arbitrability issue was "easily severable from the merits of the underlying disputes," *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. at 939, such that resolution of the petition to compel arbitration by the federal district court in that case had no effect on the remaining dispute in state court between the respondent and a third party, not a party to the arbitration agreement, which dispute could still be resolved separately in the state-court action. *See Ranger Fuel Corp. v. Youghiogheny & Ohio Coal Co.,* 677 F.2d 378, 379–80 (4th Cir.), *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982). In this case, the merits of the underlying disputes Bell has with the Alabama corporation and individual agents are *not* so easily severable, since a decision by this court on the arbitrability issue could take the issues between Bell and the remaining state-court defendants *out* of the hands of the state court— and yet a further action in the state court ordering Bell to arbitrate with those additional parties would be necessary, since they are not properly before this court as parties, and the Anti–Injunction Act exceptions do not apply. Neither *Moses H. Cone* nor *Ranger Fuel* sanctions such a result.

The Supreme Court in *Moses H. Cone* also thought it important that the state court, if handed the arbitration issue, might not adequately protect the right of the movant by issuing an order to compel arbitration, because it was ambiguous whether § 4 granted state courts coextensive powers to compel arbitration. 460 U.S. at 26–27, 103 S.Ct. at 942–43. While the Supreme Court has continued to decline to rule explicitly whether § 4 of the Federal Arbitration Act, including its procedural aspects, applies in full to the states, *see Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 477 n. 6, 109 S.Ct. 1248, 1255 n. 6, 103 L.Ed.2d 488 (1989), this concern no longer obtains.

Under § 2 of the Arbitration Act, the obligation of the state and federal courts to enforce valid arbitration agreements in contracts is identical. *Southland Corp. v. Keating,* 465 U.S. 1, 15–16, 104 S.Ct. 852, 860–61, 79 L.Ed.2d 1 (1984); *Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 270–74, 115 S.Ct. 834, 838–39, 130 L.Ed.2d 753 (1995). Although state law of contracts governs the determination of whether the parties agreed to arbitrate a certain matter, *First Options of Chicago,* 514 U.S. at 943–45, 115 S.Ct. at 1924, a federal court sitting in diversity jurisdiction must, in any case, also apply state substantive law of contracts, yielding no distinction whatsoever in the treatment of motions to compel arbitration in state courts, or, under § 4 of the Arbitration Act, in federal courts. The strong federal policy favoring arbitration must also be enforced in both state and federal court. *See Volt Info. Sciences.* 489 U.S. at 475–76, 109 S.Ct. at 1254; *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 62–64 & n. 9, 115 S.Ct. 1212, 1219 & n. 9, 131 L.Ed.2d 76 (1995). Any state law that singles out arbitration agreements for disfavored treatment is displaced by the Federal Arbitration Act. *Doctor's Assocs., Inc. v. Casarotto,* —— U.S. ——, —— – ——, 116 S.Ct. 1652, 1655–56, 134 L.Ed.2d 902 (1996). Thus, recently the Supreme Court of California, despite upholding an *Erie* distinction between substantive and procedural law in the Federal Arbitration Act, drawing on dicta from *Moses H. Cone* itself,[13] reasoned that "the federal policy of ensuring enforcement of private arbitration agreements, centrally embodied in section 2, is not self-implementing; its effectuation requires that courts have available some procedure by which a party seeking arbitration may compel a resisting party to arbitrate. Section 4 of the [Federal Arbitration Act] establishes one such procedure; state law may or may not provide for other equivalent or similar procedures. If no adequate state procedures are provided, state courts may, in order fairly to adjudicate a

---

**13.** "This is necessary to carry out Congress' intent to mandate enforcement of all covered arbitration agreements; Congress can hardly have meant that an agreement to arbitrate can be enforced against a party who attempts to litigate an arbitrable dispute in federal court, but not

against one who sues on the same dispute in state court." In other words, complete and adequate relief is available in state court but not in this court. *Moses H. Cone,* 460 U.S. at 26–27 n. 34, 103 S.Ct. at 942–943 n. 34.

federal claim for enforcement of an arbitration agreement, be obliged to adopt a procedure similar in its essentials to that set out in the [Arbitration Act].... That section 2 of the [Federal Arbitration Act] does preempt contrary state law is established; it follows that a state procedural statute or rule that frustrated the effectuation of section 2's central policy would, where the federal law applied, be preempted by the [Arbitration Act]." *Rosenthal v. Great Western Fin. Sec. Corp.,* 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 883, 926 P.2d 1061, 1068–69 (1996).

## VI. INDISPENSABLE PARTIES

Another approach courts have taken to this problem of how to deal with selective joinder of parties, in a parallel federal action under § 4 the Federal Arbitration Act to compel arbitration of the subject matter of a state court suit, starts from the other side: the district court's obligation to consider whether all necessary and indispensable parties are before it. *See, e.g., Ranger Fuel,* 677 F.2d at 380; *Green Tree Fin. Corp. v. Holt,* 171 F.R.D. 313 (N.D.Ala.1997). In relevant part, Rule 19(a) of the Federal Rules of Civil Procedure provides:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party."

Subsection (b) of Rule 19 then provides:

"If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgement rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

The task of a district court hearing a petition to compel arbitration, as said earlier, is first to determine whether there exists a valid and enforceable arbitration agreement between or among the parties before it, *First Options of Chicago,* 514 U.S. at 941–47, 115 S.Ct. at 1923–25, and whether the disputes it governs involve interstate commerce. *Allied-Bruce,* 513 U.S. at 276–78, 115 S.Ct. at 841; *Staples v. The Money Tree,* 936 F.Supp. 856, 858–59 (M.D.Ala.1996); *Roberson v. The Money Tree of Ala., Inc.,* 954 F.Supp. 1519, 1523 (M.D.Ala.1997). By insisting that the other state-action defendants are covered by the arbitration clause, the foreign corporations are in effect requesting that this court deem the other state-action defendants indispensable parties.

The court, as part of its determination of the scope and validity of the arbitration agreement, would necessarily have to decide whether disputed issues between Conner Auto Sales and the individual agents in Alabama, on the one hand, and Bell, on the other, must be arbitrated, which could be prejudicial to the interests of the non-joined parties, since their rights to proceed in the state civil suit would be decided without opportunity for them to appear and argue in this court. In addition, if the court examined only whether the parties to this petition were bound by the arbitration agreement, and deferred the question of the status of the remaining state court parties, then the "judgment rendered in [their] absence [would] be inadequate," Fed.R.Civ.P. 19(b), and the state court would have to take up the same arbitrability question, which would not only

be duplicative and time-consuming, but open the door for the state court to potentially reach a different conclusion about the scope and validity of the arbitration agreement, or to challenge the preclusive effects of this court's rulings.[14]

With a few procedural twists, this is substantially the assessment the district court made in *Green Tree Fin. Corp. v. Holt*, convincing it to decline jurisdiction over a petition to compel under § 4 of the Arbitration Act. In that case, a mobile home purchaser sued the seller and the contract assignee in state court, and the assignee filed a suit in federal court to compel arbitration. Joining the seller would have defeated diversity jurisdiction in federal court, yet the arbitration clause in the sales contract clearly covered disputes between the buyer and seller. The court saw clear potential for prejudice to the parties' rights in the absence of the seller, along with risks of duplication, and inconsistent obligations. The court relied both on a Rule 19 analysis, and a consideration of the *Colorado River* factors, such as the best-positioned court and the nonseverability of the disputes, in reaching that decision.

The most compelling factor, however, is that the foreign corporations in this action would have an adequate remedy if this action is dismissed for nonjoinder, because, as was explained above, the state court has exactly the same duty to examine and enforce arbitration agreements as this court does. *Ranger Fuel*, 677 F.2d at 381.

Therefore, according to both a Rule 19 analysis of the claims of the foreign corporations, and a balanced consideration of the *Colorado River* abstention factors, such as the best-positioned forum, the risk of piecemeal litigation, and the ease of severability,[15] the court concludes that it should abstain from ruling on the arbitration petition at this time, so as to allow this aspect of the litigation to be pursued in the same forum where the action was originally brought by Bell— the state court.

## VII. CONCLUSION

Although this court has subject-matter jurisdiction over the petition to compel arbitration filed by foreign corporations, it should abstain in favor of the state court proceeding, for this court does not have jurisdiction over all the parties the foreign corporations insist are covered under the canopy of the arbitration agreement between Bell and TranSouth and it cannot enjoin the state court action filed by Bell. On the other hand, the foreign corporations remain entirely free to pursue complete relief in state court, including their request to compel arbitration and for a stay of the state-court proceeding, and indeed should have done so from the start. In other words, complete and adequate relief is available in state court but not in this court.

The dismissal of this lawsuit will be without prejudice, however. Should, for some unforeseen reason, the state trial and appellate courts fail to honor adequately the federal policy favoring arbitration, then the calculus this court has made under the Federal Arbitration Act, the Federal Anti–Injunction Act, and the *Colorado River* Doctrine could change and federal relief could be justified. *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. at 943 ("It is highly questionable whether this Court would have approved a dismissal of a federal suit in *Colorado River* ... if the federal courts did not remain open to a dismissed plaintiff who later demonstrated the inadequacy of the state forum.").

An appropriate judgment dismissing this lawsuit without prejudice will be entered.

---

**14.** For an example of how complicated issues of preclusion between state and federal courts can become in this area, *see, e.g., Distajo* 66 F.3d at 446–51.

**15.** *See, e.g., Darling's v. Nissan Motor Corp.*, 863 F.Supp. 26 (D.Me.1994) (where proceeding with parallel federal court action would result in piecemeal litigation of issues that are not easily severable, action dismissed under *Colorado River* doctrine due to exceptional circumstances).