**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-1834**

HOME BUYERS WARRANTY CORPORATION, a Colorado corporation;
NATIONAL HOME INSURANCE COMPANY (a Risk Retention Group), a
Colorado corporation; NEW HOME WARRANTY INSURANCE COMPANY (a
Risk Retention Group), a Colorado corporation,

Petitioners – Appellants,

v.

LOIS HANNA,

Respondent – Appellee.

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.   Joseph R. Goodwin,
District Judge.   (2:13-cv-01859)

Argued:  March 18, 2014                 Decided:  April 29, 2014

Before WILKINSON, MOTZ, and DIAZ, Circuit Judges.

Remanded with directions by published opinion.   Judge Wilkinson
wrote the opinion, in which Judge Motz and Judge Diaz joined.

**ARGUED**: Carlos Victor Yguico, GEMMILL BALDRIDGE & YGUICO, Los
Angeles, California, for Appellants.    Christopher Brinkley,
MASTERS LAW FIRM, LC, Charleston, West Virginia, for Appellee.
**ON BRIEF**: James W. Marshall, BAILEY & WYANT, PLLC, Charleston,
West Virginia, for Appellants.

WILKINSON, Circuit Judge:

Lois Hanna filed a lawsuit in state court against multiple defendants alleging various construction defects in her recently completed home. Petitioners are a subset of defendants in the state court suit because of a warranty they issued on Hanna's home. They subsequently filed in federal district court a petition to compel Hanna to arbitrate her claims against them based on an arbitration clause in the warranty. Petitioners predicated subject matter jurisdiction on complete diversity of the parties under 28 U.S.C. § 1332. Hanna argues that petitioners failed to join necessary and indispensable parties, some of which are non-diverse from Hanna, under Rule 19 of the Federal Rules of Civil Procedure. We agree, and remand to the district court with directions to dismiss the petition for want of subject matter jurisdiction.

I.

A.

On August 1, 2009, Hanna signed a contract with Clark Lamp II and Innovative Design & Construction, LLC ("Innovative"), for the construction of a new home. Lamp provided Hanna with a Builder's Warranty and Certificate ("Builder's Warranty") that covered workmanship and materials for one year, mechanical systems and appliances for two years,

2

and the structure of the house for ten years. The Builder's Warranty named Lamp as the "Warrantor," but it did not indicate that he would enroll Hanna's house in a warranty offered by a third party, nor did it authorize him to take such an action. It also provided that:

> This Warranty shall be in addition to, and in no way reduce, all other rights and privileges which Owners may have in law or in equity or under any other instrument, and shall be binding on the Warrantor notwithstanding any provision to the contrary contained in the contract of purchase or any other instrument executed by the Owners.

J.A. 136. Lamp, Innovative, and several subcontractors and engineers (collectively "the Builders"), designed and built the house. Hanna moved into the structure in September 2010 and closed on the home purchase that December.

At some point before the closing, Lamp and Innovative enrolled Hanna's home in a 2-10 Home Owners Warranty (the "2-10 Warranty") offered by the Home Buyers Warranty Corporation, the National Home Insurance Company, and the New Home Warranty Insurance Company (collectively "the Warranty Companies"). The 2-10 Warranty offered nearly identical protection as the Builder's Warranty: one year on the home's workmanship, two years on its systems, and ten years on its structure. The 2-10 Warranty also contained something that the Builder's Warranty did not: an arbitration clause. It stated, in relevant part:

3

> Any and all claims, disputes and controversies by or between the owner, the Builder/Seller, the Warranty Insurer and/or [Home Buyers Warranty Corporation], or any combination of the foregoing, arising from or related to this Warranty, shall be settled by binding arbitration. . . . Any person in contractual privity with the Builder/Seller whom the Home owner contends is responsible for any construction defect in the Home shall be entitled to enforce this arbitration agreement. . . . The decision of the arbitrator shall be final and binding and may be entered as a judgment in any State or Federal court of competent jurisdiction.

J.A. 17 (boldface type omitted).

The 2-10 Warranty states that it was issued pursuant to a "Builder Application for Home Enrollment," a document Hanna had purportedly "signed with [her] Builder." J.A. 143. Hanna contends that she signed no such document and no application for enrollment appears in the present record. Additionally, the record contains no evidence that Hanna authorized Lamp and Innovative to enroll her home in the 2-10 Warranty. Hanna admits that she first heard that her home had been enrolled in the 2-10 Warranty in the fall of 2010, but contends that she did not learn about the arbitration clause until documents were mailed to her in February 2011, after the closing on her new house.

## B.

Hanna came to believe that her home contained a number of defects and notified Lamp and Innovative, who then filed a claim with the Warranty Companies in November 2011. Hanna was not

4

satisfied with the response of Lamp, Innovative, the Warranty Companies, or the two additional entities involved in the adjustment of her warranty claims (the "Claims Adjusters"). Therefore, on November 27, 2012, she filed suit in West Virginia state court against the Builders, Warranty Companies, and Claims Adjusters. See Hanna v. Innovative Design & Construction, LLC, Circuit Court of Kanawha County, West Virginia, Case No. 12-C-2358. Hanna currently advances seven counts in that suit: "(1) negligence in the construction of the home; (2) breach of the construction contract, addenda, covenants and builder's warranty associated with the construction of the home; (3) breach of implied warranties of habitability and merchantability; (4) breach of the [2-10 Warranty]; (5) bad faith denial of Hanna's benefits under the [2-10 Warranty]; (6) fraud and misrepresentation with respect to the [2-10 Warranty]; and (7) punitive damages." J.A. 321. All of her claims arise from state law.

Furthermore, Hanna contends that the arbitration provision in the 2-10 Warranty is unenforceable on various state law grounds. The Warranty Companies indicated in their federal petition that they intended to "plead arbitration as an affirmative defense" to Hanna's state court claims, J.A. 8, and their counsel confirmed at oral argument before this court that they have done so.

On February 1, 2013, the Warranty Companies filed a Petition to Compel Arbitration before the U.S. District Court for the Southern District of West Virginia.  In the petition they asked the district court to order Hanna to arbitrate her claims against them based on the arbitration clause in the 2-10 Warranty and to stay the state court proceedings against them while the arbitration was pending.  The Warranty Companies predicated their petition on diversity jurisdiction under 28 U.S.C. § 1332.  None of the Builders were joined as parties.

Hanna filed a Motion to Dismiss on April 5, arguing that the district court lacked subject matter jurisdiction because the entire controversy underlying the petition included non-diverse parties.  In the alternative, she argued that the case had to be dismissed because those same non-diverse parties were necessary and indispensable parties that the Warranty Companies failed to join under Rule 19 of the Federal Rules of Civil Procedure.  Hanna noted that, although the Warranty Companies are foreign corporations for diversity purposes, she shared West Virginia citizenship with Lamp, Innovative, and at least three of the other Builders.

The Warranty Companies contended that the parties to the petition were diverse and that the Federal Arbitration Act ("FAA") and <u>Moses H. Cone Memorial Hospital v. Mercury</u>

Construction Corp., 460 U.S. 1 (1983), established that the co-defendants in the state court action need not be joined as parties. They also requested that the district court exercise its power under 28 U.S.C. § 2283 to halt the state court proceedings against them.

On June 10, the district court abstained under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), from ruling on the merits of the petition to compel arbitration. The district court weighed the various Colorado River factors bearing upon abstention, ultimately concluding that it had "no reason to doubt the petitioners' ability to pursue their rights in the state court system" and that it could not "find that the arbitration issue can only be resolved efficiently in this court." J.A. 325. The lower court did not address the parties' arguments on subject matter jurisdiction and simply ordered the petition dismissed. The Warranty Companies thereafter filed this timely appeal.

II.

We first consider the threshold issue of subject matter jurisdiction. The Warranty Companies contend that the district court has subject matter jurisdiction, that it erred in declining to exercise jurisdiction over their petition under the Colorado River abstention doctrine, and that the arbitration

7

clause is enforceable against Hanna. We do not reach the questions of abstention or enforceability because we find that the district court lacked subject matter jurisdiction. Because it is a question of law, we review de novo whether such jurisdiction exists. Trans Energy, Inc. v. EQT Prod. Co., 743 F.3d 895, 900 (4th Cir. 2014).

Fundamental to our federal system is the principle that "[f]ederal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). District courts may only hear a case when they possess the "power authorized by Constitution and statute." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) (internal quotation marks omitted). When a party desires to proceed in a federal court, it "must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008). For if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed.

The Warranty Companies argue that the district court has subject matter jurisdiction on two grounds: diversity of citizenship under 28 U.S.C. § 1332 and the FAA, 9 U.S.C. § 4. It is well established that § 4 does not create federal jurisdiction, but applies only when "diversity of citizenship or

8

some other independent basis for federal jurisdiction" exists. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n. 32 (1983). Thus, the only potential source of jurisdiction for the Warranty Companies' petition is the diversity of the parties.

And of course under § 1332 that diversity must be complete "such that the state of citizenship of each plaintiff must be different from that of each defendant." Athena Automotive, Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999). Hanna, as a citizen of West Virginia, does not dispute that the Warranty Companies are completely diverse from her. Rather, she maintains that the Warranty Companies have failed to include as necessary and indispensable parties the Builders, some of which are also citizens of West Virginia. See Northport Health Servs. of Ark., LLC v. Rutherford, 605 F.3d 483, 486 (8th Cir. 2010) ("[D]iversity of citizenship is determined by reference to the parties named in the proceeding before the district court, as well as any indispensable parties who must be joined pursuant to Rule 19.") (internal quotation marks omitted).[1]

---

[1] Hanna also argues that under Vaden v. Discover Bank, 556 U.S. 49, 62 (2009), we may "look through" the petition to compel arbitration to the underlying dispute in state court to ascertain whether it contains non-diverse parties. Because we determine that the Builders are necessary and indispensable parties under Rule 19, we need not address whether Vaden applies to petitions predicated on diversity jurisdiction.

9

A.

Rule 19 of the Federal Rules of Civil Procedure sets forth a two-step inquiry for courts to determine whether a party is "necessary" and "indispensable." The first question under Rule 19(a) is "whether a party is necessary to a proceeding because of its relationship to the matter under consideration." Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917 (4th Cir. 1999). Second, if the party is necessary but joining it to the action would destroy complete diversity, the court must decide under Rule 19(b) "whether the proceeding can continue in that party's absence." Id. at 917-18.

Rule 19 is not to be applied as a "procedural formula." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 119 n. 16 (1968). Decisions "must be made pragmatically, in the context of the 'substance' of each case," id., and courts must take into account the possible prejudice "to all parties, including those not before it," Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999). While the dismissal of a case is a "drastic remedy [that] should be employed only sparingly," it is required if a non-joined party to the dispute is both necessary and indispensable. Keal, 173 F.3d at 918.

Here, as indicated in Owens-Illinois, 186 F.3d at 441-42, the relevant dispute (and hence the primary focus of necessary and indispensable party analysis) is the dispute over

10

arbitrability and the need generated by the 2-10 Warranty arbitration clause for the Builders to be in the courtroom. See also Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 446 (2d Cir. 1995).[2]

1.

The first stage of our inquiry focuses on whether there were necessary parties not joined in the petition. A party might be necessary under either Rule 19(a)(1)(A) or (B). We begin here with Rule 19(a)(1)(B), which provides that a non-joined party is necessary to an adjudication if it "claims an interest relating to the subject of the action" and its absence would either conflict with its "ability to protect the interest," Rule 19(a)(1)(B)(i), or "leave an existing party subject to substantial risk of incurring . . . inconsistent obligations because of the interest," Rule 19(a)(1)(B)(ii). Each of these criteria requires that we attempt to forecast the future course of this litigation, which of course is no simple matter. However, there are enough potentially prejudicial outcomes under either of these standards to warrant the conclusion that the Builders are necessary parties.

---

[2] We do not read Owens-Illinois as in tension with Ranger Fuel Corp. v. Youghiogheny & Ohio Coal Co., 677 F.2d 378 (4th Cir. 1982), which, while discussing the merits dispute, avoided any definitive resolution of the question.

11

Rule 19(a)(1)(B)(i) directs us to consider a non-joined party's ability to protect its own interests. The Builders have a direct pecuniary interest in the dispute through the 2-10 Warranty; indeed, they are actively contesting their liability in state court with respect to Hanna's claims against them under that contract. The Warranty Companies seek arbitration of identical claims. Hanna is also suing the Builders in tort; several of her tort claims likewise reference the 2-10 Warranty provisions. Although joint tortfeasors from a state court proceeding are not automatically necessary parties to a federal case under Rule 19, Northport, 605 F.3d at 490-91, the Builders' interest in this case extends even beyond the possibility of tort liability. The 2-10 Warranty obligates the Warranty Companies to insure the Builders' liability for construction defects like those alleged by Hanna, giving the Builders a natural interest in any adjudication of the terms of that contract. See Ranger Fuel Corp. v. Youghiogheny & Ohio Coal Co., 677 F.2d 378, 379 (4th Cir. 1982).

Furthermore, Lamp and Innovative are critical to the question of whether or not the arbitration clause is enforceable in the first place. Hanna alleges that she did not consent to arbitration and never authorized Lamp and Innovative to agree to an arbitration clause on her behalf. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 684 (2010) (holding that

12

a "foundational FAA principle [is] that arbitration is a matter of consent"). Thus, the outcome of the petition could very well turn on a determination of whether Lamp's and Innovative's enrollment of Hanna's home in the 2-10 Warranty was consensual and legally binding on Hanna. Such a ruling could have a significant impact on the Builders' potential liability before the state court. While the Warranty Companies contend that Lamp and Innovative could simply serve as fact witnesses, fairness requires that Lamp and Innovative be joined as necessary parties to protect their own interests in the determination of the legal significance of their actions. See Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc., 210 F.3d 246, 251-52 (4th Cir. 2000).

Rule 19(a)(1)(B)(ii) is a separate basis for finding a non-joined party necessary and protects the existing parties to the action from "incurring . . . otherwise inconsistent obligations because of the [non-joined party's] interest." The existence of two concurrent proceedings here creates a "high likelihood" that one or more of the parties will be subject to conflicting obligations. Owens-Illinois, 186 F.3d at 441. If the Warranty Companies' petition is allowed to proceed, the district court will be required to determine whether the arbitration clause is enforceable and, because the Builders are entitled to demand arbitration under the provision, the state court may be faced with the same task. One court could enforce the arbitration

13

clause while another finds it unenforceable. See id. (holding that risk of inconsistent interpretations of arbitration clause by different tribunals merited adjudication of entire case before one court).

Unlike in this petition, the Builders (and all others) are present as parties before the state court. That court is thus better positioned to take into account the Builders' interests. Moreover, it is undeniable that adding a federal court, and any arbitration panel it might compel, to the equation multiplies the tribunals adjudicating the dispute and thereby increases the likelihood of contradictory rulings. Where possible, law should be utilized to streamline and simplify. We decline to impose added expense and complexity upon these litigants, when there are no good reasons sounding in the fair or efficient administration of justice to do so. See Ranger Fuel, 677 F.2d at 380 (rejecting district court's order that had effect of "multiplying procedures that might lead to inconsistent results").

Finally, Rule 19(a)(1)(A) sets forth another necessity standard, stating that a non-joined party is necessary when "the court cannot accord complete relief among existing parties." The above discussion concerning the "overarching legal and factual issues" makes it clear that any tribunal to address this matter must have the Builders present as parties to fully

14

resolve the dispute arising from the alleged construction defects in Hanna's home. Schlumberger Indus., Inc. v. Nat'l Sur. Corp., 36 F.3d 1274, 1287 (4th Cir. 1994). If Hanna is entitled to full recovery on the defects in her house, then it is crucial that all of the defendants be bound to the burdens of a common judgment. See id. at 1286 (finding prejudicial that failure to join insurers as parties would potentially cause existing party to "wind up with less than full coverage even though it was legally entitled to full coverage") (emphasis omitted). Therefore, the Builders are necessary parties under the criteria of Rule 19.

2.

Several of the Builders are citizens of West Virginia and would destroy complete diversity if joined. We must thus decide whether they are "indispensable" to the proceeding. Rule 19(b) provides that if a necessary party cannot be joined without destroying jurisdiction "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." In light of the four factors contained in Rule 19(b), we conclude that the Builders are indispensable parties.

The first factor addresses "the extent to which a judgment rendered in the [non-joined party's] absence might prejudice the parties." Owens-Illinois, 186 F.3d at 441. This factor speaks

15

to many of the same concerns addressed by the necessity analysis under Rule 19(a)(1)(B). Keal, 173 F.3d at 919. As discussed above, there is a high probability of prejudice to the Builders if the petition advances. That is especially true for Lamp and Innovative, as they are allegedly responsible for enrolling Hanna in the 2-10 Warranty. See Nat'l Union, 210 F.3d at 252-53 (finding under first factor that prejudice to non-joined party was "particularly strong given that [it] negotiated and entered into the [insurance] policy, and this suit concerns [its] conduct"). Hanna also has a powerful interest in having all of the defendants together and adjudicating all of her claims before one tribunal.

The second factor considers the extent to which protective measures can be taken to lessen or avoid the prejudicial impact of proceeding in the non-joined party's absence. Here, it is not clear how the district court could do so. Different tribunals might be required to rule on the validity of the arbitration provision and each must address the existence and extent of construction defects in Hanna's home, which could result in inconsistent judgments and conflicting obligations on the parties. The Warranty Companies do not suggest how the court might head off such confusion, and the prospect of prejudice from parallel proceedings is thus substantial. See Keal, 173 F.3d at 919.

16

The third factor addresses the adequacy of a judgment rendered in the non-joining party's absence, which focuses on "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." Provident Bank, 390 U.S. at 111. Here the parallel proceedings could produce just the opposite: incomplete, inconsistent, and inefficient rulings. Thus this factor also points to the Builders as indispensable parties in the proceedings. See Nat'l Union, 210 F.3d at 253.

Under the fourth factor we consider whether the petitioners "would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). Of course they would. The state court is entirely capable of adjudicating this dispute. All of the necessary parties are joined in that forum. The suit arises wholly from state law and, in the event it goes to trial, the witnesses and exhibits common to Hanna's claims against all the co-defendants are readily available. Owens-Illinois, 186 F.3d at 442. Furthermore, Hanna and the Warranty Companies have already begun to address the validity of the arbitration clause in the state court and "[u]nder the FAA, state courts as well as federal courts are obliged to honor and enforce agreements to arbitrate." Vaden v. Discover Bank, 556 U.S. 49, 71 (2009). "[W]e see no reason why the Circuit Court of Kanawha County, West Virginia will not provide an adequate

17

remedy for the parties in this case." Owens-Illinois, 186 F.3d at 442.

All four Rule 19(b) factors point to the Builders being indispensable to the petition. Because the Builders are both necessary and indispensable, the petition must be dismissed for lack of subject matter jurisdiction.

B.

A final point, however, is critical. The Warranty Companies argue that the FAA's policy in favor of arbitration agreements means they are due a federal forum for their arbitrability claim. While the strong federal policy favoring enforcement of arbitration agreements is clear, it does not establish subject matter jurisdiction here.

The FAA was adopted by Congress in 1925 in an effort to "shift [courts] from an attitude of inveterate hostility toward arbitration agreements to one strongly favoring arbitration and encouraging the rigorous enforcement of all arbitration agreements." Glass v. Kidder Peabody & Co., 114 F.3d 446, 451 (4th Cir. 1997). The Supreme Court recognized this transformation in Moses H. Cone when it applied the "liberal federal policy favoring arbitration agreements" to overturn a district court's decision to abstain from exercising jurisdiction over a case under the Colorado River doctrine. 460 U.S. 1, 24, 29 (1983).

18

The Warranty Companies contend that Moses H. Cone requires the district court to take subject matter jurisdiction over this petition. But unlike in the case before us, there was no question in Moses H. Cone that all the necessary and indispensable parties were joined in the petition to compel arbitration. Moses H. Cone thus did not address subject matter jurisdiction or Rule 19 joinder; instead, it applied only to a federal court's decision to abstain from exercising pre-existing jurisdiction. Id. at 25-26 ("[W]e emphasize that our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction."). Indeed, Moses H. Cone reaffirmed that the FAA does not provide an independent basis of subject matter jurisdiction. Id. at 25 n. 32. And while federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," that does not imply a federal court may assert jurisdiction where it is not congressionally authorized. Id. at 15 (internal quotation marks omitted).

This makes perfect sense. The FAA applies with as much force in state courts as in federal. Id. at 25; see also KPMG LLP v. Cocchi, 132 S. Ct. 23, 24 (2011) (per curiam)

19

(recognizing that arbitration agreements "within the scope and coverage" of the FAA "must be enforced in state and federal courts"). That is not to say, of course, that federal courts lack jurisdiction for all petitions under § 4 of the FAA whenever they involve a subset of diverse parties to a state court proceeding that also includes non-diverse parties. All it means is that, although the FAA clearly favors the enforcement of arbitration agreements as a general matter, there is no obvious reason why that policy must be vindicated in a federal over a state forum. Moses H. Cone, 460 U.S. at 25 n. 32 (noting that "enforcement of the [FAA] is left in large part to the state courts"). In sum, Moses H. Cone and the undisputed interest in honoring arbitration agreements does nothing to undermine our conclusion that subject matter jurisdiction is lacking here.


                                III.

     For the foregoing reasons we hold that the petition of the Warranty Companies cannot proceed in federal court because the joinder of necessary and indispensable parties would extinguish the power of the court to hear the case. The petition is hereby remanded to the district court with directions to dismiss it for want of subject matter jurisdiction.

                                      REMANDED WITH DIRECTIONS