**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2366

GUNVOR SA,

Plaintiff - Appellant,

v.

ARMAN KAYABLIAN; LAWRENCE KAYABLIAN; AMIRA GROUP COMPANY, LLC,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:18-cv-00934-LMB-MSN)

Argued: December 10, 2019                    Decided: January 22, 2020

Before MOTZ and KEENAN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Keenan and Senior Judge Traxler joined.

**ARGUED:** William Robert Bennett, III, BLANK ROME LLP, New York, New York, for Appellant. William T. O'Brien, DENTONS US LLP, Washington, D.C., for Appellees. **ON BRIEF:** Lauren B. Wilgus, New York, New York, Kierstan L. Carlson, BLANK ROME LLP, Washington, D.C., for Appellant. John W. Lomas, Jr., Daniel G. Morris, DENTONS US LLP, Washington, D.C., for Appellees.

DIANA GRIBBON MOTZ, Circuit Judge:

Gunvor SA, a Swiss corporate business entity, sued United States citizens Arman and Lawrence Kayablian and the Amira Group Company, LLC, in the Eastern District of Virginia. Invoking the court's alienage diversity jurisdiction, Gunvor asserted various state-law claims. The defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) on the ground that Gunvor had failed to join Nemsss Petroleum Ltd., a British Virgin Islands corporation, which the defendants asserted was necessary and indispensable to the action. The district court agreed and, because joining Nemsss, another foreign entity, as a defendant would have destroyed complete diversity and so subject matter jurisdiction, dismissed the complaint without prejudice. Gunvor now appeals that order. For the reasons that follow, we affirm.

I.

A.

We set forth the facts as alleged in Gunvor's verified complaint and in the contracts at issue here. Gunvor is a global commodities firm that trades crude oil and refined oil products. The Kayablians are officers of Amira and officers and directors of Nemsss, a subsidiary of Amira.

In spring 2016, the Kayablians approached Gunvor about a possible business relationship involving sales of Iraqi fuel oil. The Kayablians had access to Iraqi fuel oil through Gulf Energy for Petroleum Services, an Iraqi subsidiary of Nemsss. As an Iraqi company, Gulf Energy was able to purchase Iraqi fuel oil at the below-market domestic

2

price from the Iraqi Oil Tankers Corporation, a state-owned Iraqi company. But the Kayablians lacked the capacity and expertise to sell the fuel oil on the international market, where it would command a higher price. The Kayablians sought out Gunvor as a financing partner to provide upfront capital and logistical support to purchase the fuel oil in volume and resell it on the international market. The proposal envisioned both parties profiting from the transactions.

The parties discussed how best to structure the deal. Gunvor alleges in its complaint that the parties considered forming a joint venture, but ultimately decided to use "a series of one-off contracts that mimicked the structure of a [joint venture] without the formality." The contracts that enabled the deal included: (1) a contract for the Iraqi Oil Tankers Corp. to sell fuel to Gulf Energy; (2) a contract for Gulf Energy to sell the fuel to Nemsss; and (3) four contracts (the "Fuel Oil Contracts") for Nemsss to sell the fuel to Gunvor. In this way, the fuel would pass from the Iraqi Oil Tankers Corp., which would convey it at the lower Iraqi domestic price, through Gulf Energy and Nemsss to Gunvor, which would sell it to third parties at the higher international market price.

The Fuel Oil Contracts are especially relevant here. Each included an integration clause:

> This contract contains the entire agreement between the parties and supersedes all previous negotiations, representations, agreements or commitments with regard to its subject matter.

> Each party acknowledges that in entering into this contract it has not relied on any representations, warranties, statements or undertakings except those which are expressly set out herein.

Each Fuel Oil Contract also included a dispute resolution clause:

> This contract shall be governed by and construed in accordance with English law. Any controversy, dispute or claim whatsoever arising out of or in connection with this contract or the breach thereof shall be referred to arbitration in London . . . . For the avoidance of doubt this will not prevent either party from taking proceedings in any other jurisdiction to obtain security or ancillary relief or to enforce any order or award.

Gunvor drafted the Fuel Oil Contracts, including both the integration and dispute resolution clauses.

The Fuel Oil Contracts required Gunvor to provide the upfront capital for the arrangement in the form of "prepayments," in amounts ranging from $3 million to $12 million. Gunvor was to remit the prepayments to Nemsss, which would remit the funds to Gulf Energy, which would in turn remit them to the Iraqi Oil Tankers Corp. in order to procure the fuel. Gunvor alleges in its complaint that these prepayments were to function as "credit [that] would be applied against the sale price of the fuel charged to Gunvor."

Gunvor made its contractually obligated payments to Nemsss, in total remitting nearly $125 million. Gunvor alleges, however, that it received only about $101 million worth of fuel oil. Increasingly concerned, Gunvor asked the Kayablians to account for the missing $24 million, to no avail. When Gunvor then asked the Kayablians to refund the disputed funds, they refused.

B.

Maintaining that the Kayablians and Amira had defrauded it, Gunvor brought this action in federal court in Virginia. Gunvor invoked the court's diversity jurisdiction for suits between citizens of a U.S. state and a citizen of a foreign state. Gunvor asserted state-

4

law claims for fraud, fraudulent inducement, conversion, unjust enrichment, negligent misrepresentation, and civil conspiracy. The complaint identified Nemsss and Gulf Energy as nonparties and sought to impose alter ego liability on the defendants for these nonparties' acts.

The Kayablians and Amira moved to dismiss the suit for nonjoinder of a necessary and indispensable party — Nemsss — that, as another foreign entity, would destroy complete diversity. In the alternative, they moved to compel arbitration.

The district court granted the motion to dismiss. In an oral ruling, the court held "that Nemsss . . . would be a necessary and indispensable party," notwithstanding Gunvor's "artful pleading . . . to try to avoid that reality." The court reasoned that the "core" of the parties' arrangement was the "agreement . . . for Gunvor to purchase quantities of oil from Iraq," which Gunvor was to do "through Nemsss." The district court found it "significant" that the Fuel Oil Contracts included "a complete integration clause, which contains very broad language indicating that any and all prior understandings or agreements, etc., are subsumed or integrated into these individual contracts." The court noted that these contracts "are between Gunvor and Nemsss, not the individuals who are named as defendants." Because joining Nemsss, a foreign corporation, would "destroy the diversity jurisdiction," the district court dismissed the complaint without prejudice.[1]

---

[1] Because Gunvor could not cure the defect in its complaint without destroying jurisdiction, we may consider its appeal even though the dismissal was without prejudice. *See Domino Sugar Corp. v. Sugar Workers Local Union 392*, 10 F.3d 1064, 1066–67 (4th Cir. 1993); *see also Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 916 (4th Cir. 1999).

In addition, the district court stated "for the record that if I had jurisdiction, I would have granted the motion to compel arbitration." The court continued, "[I]t's crystal clear the parties' contemplation was that English law would apply, that arbitration of any disputes in any respect related to these oil contracts would be governed by English law and would be resolved in arbitration in London."

Gunvor timely appealed.

## II.

When adjudicating a motion under Federal Rule of Civil Procedure 19, a district court asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b). *See Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). If the nonjoined party is necessary and indispensable to the action, but joinder would destroy subject matter jurisdiction, the court must dismiss the action. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Dismissal, though "a drastic remedy that should be employed only sparingly," is "required" if the nonjoined party "is both necessary and indispensable." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (alteration and internal quotation marks omitted). That determination "must be made pragmatically, in the context of the 'substance' of each case, rather than by procedural formula." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968).

We review a district court's Rule 19 dismissal for abuse of discretion, reviewing the underlying findings of fact for clear error. *Nat'l Union*, 210 F.3d at 250.

6

A.

This case hinges on a factual finding by the district court. The court found that the parties' "core agreement was for Gunvor to purchase quantities of oil from Iraq," which Gunvor was to do "through Nemsss."

In its appellate briefs, Gunvor disputes this characterization. Gunvor's briefing instead describes its agreement as a broad joint venture with the Kayablians and Amira, with Nemsss as one small cog in a much bigger machine. Gunvor claims that "the common purpose was for *the parties to the [joint venture]* — the Kayablians, Amira, and Gunvor — to share the profits from the sale of Iraqi fuel oil and the losses incurred to transport and ship the oil." Opening Br. at 16. Gunvor further contends in its briefs that the Fuel Oil Contracts between Gunvor and Nemsss "were only four of *many* contracts executed in furtherance of the [joint venture]," alongside other contracts between the Iraqi Oil Tankers Corp. and Gulf Energy, between Gulf Energy and Nemsss, and between Gunvor and its shipping charter parties. *Id.* at 17–18.

But Gunvor's briefs on appeal lie at odds with its complaint. Gunvor's opening brief, for example, describes its fuel oil arrangement as involving a fourteen-step plan, eleven steps of which involve Amira "direct[ing]" its subsidiaries to take various actions. *Id.* at 5–6. Gunvor's complaint, however, paints a different picture. The complaint alleges that by "the terms of the proposed joint venture[,] (1) Gunvor would remit the prepayment funds to Nemsss; (2) Nemsss would remit the prepayment funds to [Gulf Energy]; and (3) [Gulf Energy] would deposit the prepayment funds in full into [the Iraqi Oil Tanker Corp.]'s bank account in order to lift fuel from the Iraqi refinery." Pursuant to this

agreement, "Nemsss would make all arrangements and incur all expenses on the shore-side . . . and Gunvor would make all shipping arrangements and incur all the shipping-related expenses." "Nemsss and Gunvor," the complaint continues, "would then share their expenses and their income from their respective sales of the fuel oil on a 50:50 basis."

Thus, pursuant to the allegations in the complaint, the Fuel Oil Contracts were indeed the core of the parties' agreement, as the district court found. Nemsss, pursuant to the Fuel Oil Contracts, acted as the middleman, enabling the flow of money from Gunvor to the Iraqi-based companies and facilitating the flow of fuel oil from the refinery back to Gunvor in exchange. Even construing the agreement as a broader joint venture, Nemsss was its keystone.

The remainder of Gunvor's complaint also comports with this account. The complaint articulates Gunvor's fundamental grievance: that it made the payments required by the Fuel Oil Contracts but did not receive the benefit of its bargain. The sole parties to those contracts were Gunvor and Nemsss. Despite Gunvor's current efforts to reframe the agreement as a joint venture, Gunvor stated in its complaint that it *declined* to form a joint venture and instead freely chose to enter "a series of one-off contracts." And the complaint lays bare that the Fuel Oil Contracts and Nemsss were the linchpin of that arrangement. For instance, the complaint describes in its first sentence Gunvor's intent "to recover damages suffered as a result of Defendants' fraudulent conduct in connection with purported fuel oil contracts"; notes that the Kayablians' initial proposal sought investments in Nemsss; and lists disputed payments Gunvor made, all pursuant to the Fuel Oil Contracts. Given that Gunvor peppered its complaint with claims against Nemsss,

8

Gunvor's attempt in its appellate briefs to downplay Nemsss's role in the scheme strains credulity.

In short, Gunvor's own complaint places Nemsss at the heart of this case, and the district court's factual findings follow inexorably from that account. Taking Gunvor at its word in its complaint, its present about-face notwithstanding, we find no error (let alone clear error) in the district court's factual findings and proceed to the Rule 19 inquiry.

B.

"The first question under Rule 19(a) is whether a party is necessary to a proceeding because of its relationship to the matter under consideration." *Home Buyers*, 750 F.3d at 433 (internal quotation marks omitted). "A party might be necessary under either Rule 19(a)(1)(A) or (B)." *Id.* at 434. In this case, we look to the latter. Nemsss is necessary if it "claims an interest relating to the subject of the action," Fed R. Civ. P. 19(a)(1)(B), and adjudicating the matter in Nemsss's absence could either "as a practical matter impair or impede [its] ability to protect the interest," *id.* 19(a)(1)(B)(i), or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," *id.* 19(a)(1)(B)(ii).

Nemsss claims an interest in the Fuel Oil Contracts, which the district court correctly found to be the "core" of the parties' agreement and dispute, as explained above. Though a nonparty may formally claim an interest in an action, a "court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008). To the extent that Rule 19(a) requires *any* affirmative action from the nonjoined party at issue, the

9

declaration submitted by Lawrence Kayablian, Nemsss's chief executive officer, was sufficient for Nemss to claim an interest. That affidavit described Nemsss's agreements and relationship with Gunvor and emphasized that "[a]t no time did Nemsss Petroleum waive its right to arbitrate, which right arises from the [Fuel Oil C]ontracts." Nemsss asserted an interest in the enforcement of the Fuel Oil Contracts, thus satisfying Rule 19(a)(1)(B)'s first requirement.

Turning to the second requirement — found in Rule 19(a)(1)(B)(i) — litigating this action in Nemsss's absence could certainly impair its interest in the Fuel Oil Contracts. Gunvor now claims that "the damages and rights at issue here relate exclusively to the relationship between the Kayablians, Amira, and Gunvor" and that it does not seek to attack the Fuel Oil Contracts. Opening Br. at 24. Once again, Gunvor sings a different tune now than it did in its complaint. Gunvor's complaint alleges that the Kayablians owe it "the missing prepayment funds" — that is, the difference between the payments Gunvor made and the value of the fuel oil it received. Gunvor made these payments *to Nemsss*, pursuant to *the Fuel Oil Contracts*, under which *Nemsss* was to supply Gunvor with the volume of fuel in question.

Behind the smoke and mirrors of Gunvor's "artful pleading," as the district court put it, Gunvor signed contracts with Nemsss and now seeks damages from the Kayablians and Amira for Nemsss's alleged failure to perform under those contracts. *See F&M Distribs., Inc. v. Am. Hardware Supply Co.*, 129 F.R.D. 494, 498 (W.D. Pa. 1990). Litigating this dispute would require the court to adjudicate Nemsss's rights and obligations under the Fuel Oil Contracts, and the outcome would turn on Nemsss's conduct

10

pursuant to them. Consequently, "fairness dictates" that Nemsss "be given the opportunity to protect its separate and distinct interest as a party." *Nat'l Union*, 210 F.3d at 251. Nemsss is therefore necessary under Rule 19(a)(1)(B)(i).

Aside from the substance of the inquiry, Gunvor protests that the district court failed to expressly evaluate the Rule 19(a) factors. We have seen no authority suggesting that such explicit and detailed consideration is required.[2] A Rule 19 dismissal requires explanation, but demanding a talismanic recitation from the district court would run afoul of the "pragmatic analysis" Rule 19 requires. *Provident Tradesmens*, 390 U.S. at 119 n.16.

The district court did not abuse its discretion in deeming Nemsss a necessary party under Rule 19(a).

## C.

"[I]f the party is necessary but joining it to the action would destroy complete diversity, the court must decide under Rule 19(b) whether the proceeding can continue in that party's absence." *Home Buyers*, 750 F.3d at 433 (internal quotation marks omitted). Because Nemsss is a necessary party to the action and, as a foreign corporation, its joinder would destroy the complete diversity necessary for alienage jurisdiction, *see Slavchev v. Royal Caribbean Cruises, Ltd.*, 559 F.3d 251, 254 (4th Cir. 2009), we ask whether Nemsss

---

[2] The only case Gunvor cites in support of its contrary view, *In re Lloyd's Register N. Am., Inc.*, 780 F.3d 283 (5th Cir. 2015), is clearly inapposite. There, the court denied a defendant's motion to dismiss for *forum non conveniens* without offering any rationale. *See id.* at 288. Here, the district court addressed a very different question and offered concise but sound reasoning for rejecting Gunvor's argument: the Fuel Oil Contracts were the "core agreement" at issue in the dispute, and only Gunvor and Nemsss were parties to those contracts.

is an indispensable party under Rule 19(b). "At the outset, we note that precedent supports the proposition that a contracting party is the paradigm of an indispensable party." *Nat'l Union*, 210 F.3d at 252 (internal quotation marks omitted). Keeping that in mind, we consider, "in equity and good conscience," the four factors set forth in Rule 19(b). The "analysis is not mechanical; rather it is conducted in light of the equities at the particular case at bar." *Schlumberger Indus., Inc., v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1287 (4th Cir. 1994).

The first factor, which concerns "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," Fed. R. Civ. P. 19(b)(1), "speaks to many of the same concerns addressed by the necessity analysis under Rule 19(a)(1)(B)," *Home Buyers*, 750 F.3d at 435. For the reasons discussed above, an adverse judgment rendered in Nemsss's absence would surely prejudice Nemsss.

The second factor addresses "the extent to which any prejudice could be lessened or avoided by" "protective provisions in the judgment," "shaping the relief," or "other measures." Fed. R. Civ. P. 19(b)(2). Gunvor contends that the district court "certainly could structure any judgment" to avoid prejudice to Nemsss. Opening Br. at 28. But Gunvor offers no support for this proposition or explanation of just how the court could structure a judgment, and we do not see how the court could grant the judgment Gunvor requests without prejudicing Nemsss.

The third factor asks "whether a judgment rendered in the person's absence would be adequate." Fed R. Civ. P. 19(b)(3). This factor "focuses on the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Home*

*Buyers*, 750 F.3d at 436 (internal quotation marks omitted). Given the allegations against Nemsss in Gunvor's complaint, not joining Nemsss here could lead to parallel or subsequent litigation or indemnification actions, all of which could produce incomplete, inconsistent, and inefficient settlement of this dispute.

The fourth and final factor looks to "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). Gunvor has an adequate remedy in the absence of federal litigation: Gunvor is free to seek relief in state court, as Gunvor's counsel admitted at oral argument. *See Home Buyers*, 750 F.3d at 436; *Schlumberger*, 36 F.3d at 1288.

In sum, all four factors support the district court's determination. The court therefore did not abuse its discretion in concluding that Nemsss is an indispensable party and accordingly did not err in dismissing the complaint.

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.