**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-2316**

───────────

WILLIAM PETERSON, III,

        Plaintiff – Appellant,

      v.

HARRAH'S NC CASINO COMPANY, LLC; CAESARS ENTERTAINMENT, INC.,

        Defendants – Appellees.

───────────

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Max O. Cogburn, Jr., District Judge.  (1:23-cv-00036-MOC-WCM)

───────────

Argued:  January 31, 2025                      Decided:  March 12, 2026

───────────

Before GREGORY, RICHARDSON, and RUSHING, Circuit Judges.

───────────

Vacated and remanded by published opinion.  Judge Rushing wrote the opinion, in which Judge Gregory and Judge Richardson joined.

───────────

**ARGUED:**  Daniel Gray Leland, LELAND CONNERS PLC, Minneapolis, Minnesota, for Appellant.  Kevin Michael Cleys, LITTLER MENDELSON, P.C., Charlotte, North Carolina, for Appellees.  **ON BRIEF:**  Jake Snider, WIMER SNIDER, P.C., Asheville, North Carolina, for Appellant.

───────────

RUSHING, Circuit Judge:

Plaintiff William Peterson, III, used to work as a table games dealer at Harrah's Cherokee Casino Resort in North Carolina. After he was fired and denied an opportunity to be rehired, Peterson sued Harrah's NC Casino Company, LLC, and its corporate parent, Caesars Entertainment, Inc. (together, Harrah's), asserting employment discrimination and retaliation claims under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, and the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301 *et seq.* The district court dismissed Peterson's complaint after finding that the Tribal Casino Gaming Enterprise (TCGE)—a wholly owned and operated enterprise of the Eastern Band of Cherokee Indians (Tribe)—is a necessary and indispensable party to this litigation. *See* Fed. R. Civ. P. 19. Peterson appealed.

On this record, we conclude that the district court abused its discretion in finding that TCGE is a necessary party under Rule 19(a). Accordingly, we vacate the district court's order dismissing Peterson's complaint and remand for further proceedings consistent with this opinion.

## I.

### A.

Peterson is a United States Army veteran suffering from post-traumatic stress disorder and major depressive disorder. In 2016, he began working as a table games dealer at Harrah's Cherokee Casino Resort. The casino is owned by the Tribe, a federally recognized Indian tribe. The Tribe, through TCGE, contracts with Defendant Harrah's NC Casino Company to "operate[]" the casino. J.A. 8.

2

One day in early 2021, the casino's fire alarm went off during Peterson's shift. As Peterson "prepared to evacuate," his supervisor told him and others not to leave and to continue "deal[ing] hands to customers." J.A. 10–11. Peterson protested that the supervisor's instructions were "illegal," but the supervisor laughed it off. J.A. 11.

Peterson filed a complaint with casino management, claiming that his supervisor's instructions were improper and that "the unsafe environment during the fire alarm . . . triggered" his PTSD. J.A. 12. About a month later, Peterson requested leave under the FMLA due to his disability. After being told "not to speak about the FMLA at work" and waiting "approximately one hour" while his "symptoms worsened," he was finally allowed to leave his shift. J.A. 12–13.

A few days later, Peterson filed a complaint with human resources. He reported management's "delay in response to his reasonable accommodation request," his manager's "instructions not to discuss [the] FMLA at work," and his manager's "rude and aggressive behavior." J.A. 13. Peterson participated in a video call with the casino's benefits and wellness manager and two human resources supervisors, but they "did not provide [him] with any information on company policies or expectations regarding reasonable accommodations or FMLA leave." J.A. 14. Nor did they "advise[] [him] of his legal rights, as he had requested." J.A. 14.

About a month later, in April 2021, Peterson "arrived to work and was immediately suspended." J.A. 14. He was terminated four days later and banned from the property for 30 days. "When [Peterson] inquired why he was banned," he was allegedly told "it was because of [his] emotional distress, veteran's status, and health history." J.A. 14.

3

According to Peterson, casino management told him that the casino was "'taking precautions' due to 'everything going on in the world, with active shooters and terrorism.'" J.A. 14. Management also told Peterson that he was terminated because he violated the "company code of conduct, specifically professional judgment, stemming from alleged incidents on April 16 and 18 with toke bets placed by a player at his table." J.A. 14. Peterson was told that he would be eligible for rehire in one year.

A little over a year after he was fired, Peterson applied for and was "offered a position" at the casino as well as an "interview for another position." J.A. 15. Just before his scheduled interview, however, Peterson was informed that "he would not be interviewing for the position." J.A. 15. His job offer was then rescinded, and he was told that "he was no longer eligible for rehire with" the casino. J.A. 15–16. Peterson then filed this lawsuit.

## B.

Peterson sued in the U.S. District Court for the Western District of North Carolina. His complaint alleged four counts against Harrah's. Count I alleged that Harrah's "engaged in unlawful discriminatory employment practices in violation of the FMLA" by "terminating [Peterson's] employment . . . , rescinding a job offer, and refusing to hire him because of his protected activity." J.A. 16–17. Count II alleged Harrah's fired Peterson, rescinded his job offer, and refused to hire him in retaliation for exercising his FMLA rights, including the right to "request . . . intermittent FMLA leave." J.A. 17–18. Count III alleged that Harrah's interfered with Peterson's FMLA rights. And Count IV alleged that Harrah's violated USERRA by "terminating [Peterson's] employment . . . , rescinding

4

a job offer, and refusing to hire him because of his prior military service." J.A. 20. As relief, Peterson requested backpay, compensatory damages, and statutory damages; reinstatement or, alternatively, front pay; and an order enjoining Harrah's from its "unlawful acts." J.A. 20–21.

Harrah's moved under Federal Rule of Civil Procedure 12(b)(7) to dismiss Peterson's complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). According to Harrah's, TCGE—not Harrah's—was Peterson's "true employer" and therefore a necessary party to this suit. J.A. 27. And because TCGE enjoys tribal sovereign immunity preventing it from being sued in federal court, and the suit could not proceed "in equity and good conscience" without TCGE, dismissal was warranted. Fed. R. Civ. P. 19(b).

Harrah's submitted two documents with its motion to dismiss. First, it proffered a declaration from Leann Bridges, TCGE's "Regional Vice President of Human Resources for the Southeast [R]egion." J.A. 37. Bridges stated that the Tribe "entered into a management agreement with Harrah's to oversee the management and operations of" the casino where Peterson worked. J.A. 38–39. The declaration did not attach a copy of the management agreement. Bridges stated that Harrah's "has a single employee located in North Carolina, who oversees the management services it provides to" the Tribe, while "the remainder of the employees at [the] casino, including Peterson, are employees of TCGE." J.A. 38. The declaration also stated that TCGE issued Peterson's paychecks, attaching an exemplar.

5

Second, Harrah's submitted the letter Peterson sent to the Equal Employment Opportunity Commission before filing this suit. Relevant here, Peterson stated in the letter that TCGE and Harrah's both were his "employers." J.A. 43.

Peterson opposed Harrah's motion, and Harrah's filed a reply attaching the Tribal-State gaming compact between the Tribe and North Carolina. Peterson then filed a surreply and attached a 1996 "Management Agreement Between the Eastern Band of Cherokee Indians and Harrah's NC Casino Company, L.L.C." (Management Agreement). J.A. 120. The Management Agreement addressed Harrah's management and operation of the casino where Peterson worked, though as Harrah's acknowledges on appeal, the 1996 version submitted to the district court is outdated.

After hearing arguments from counsel, the district court granted Harrah's motion to dismiss. *See Peterson v. Harrah's NC Casino Co.*, No. 1:23-cv-63, 2023 WL 8103163 (W.D.N.C. Nov. 21, 2023). Based on Bridges's declaration, the court found that "TCGE was [Peterson's] employer," which gave TCGE "an interest in this case." *Id.* at *3. The court reasoned that TCGE could not "protect its interest without participating in the case" because (1) as Peterson's employer, TCGE "has an interest in defending against [his] employment claims"; (2) "[a]ny judgment on [Peterson's] claims would impair TCGE's contractual interests with [Harrah's]"; and (3) "excluding TCGE from this litigation would put TCGE in jeopardy of incurring multiple, and possibly inconsistent, obligations." *Id.* For "similar" reasons, the court also concluded TCGE was "indispensable" to this lawsuit, because any judgment would prejudice its "interests as an employer" and its "economic interests in the Management Agreement." *Id.* The court further reasoned that Harrah's

6

would be prejudiced because a judgment rendered in TCGE's absence would "interfere with [Harrah's] ability to resolve its contractual obligations with TCGE," and any judgment would bind only Peterson and Harrah's, leaving TCGE free to "continue enforcing the policies to which [Peterson] takes issue." *Id.*

Because TCGE enjoys the Tribe's sovereign immunity from suit in federal court, the district court concluded that TCGE could not be joined as a party to this suit. *Id.* Finding that "relief [could not] be shaped in a way that surmount[ed] the prejudice to TCGE and [Harrah's] or the limited breadth of a judgment without TCGE," the district court dismissed Peterson's complaint. *Id.* at *3–4. Peterson timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

Pursuant to Rule 12(b)(7), a defendant may move to dismiss a complaint for "failure to join a party under Rule 19" before filing a responsive pleading. Fed. R. Civ. P. 12(b)(7). Unlike with a Rule 12(b)(6) motion, where the "general rule" is that evidence "extrinsic to" the operative complaint cannot be considered, *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), a district court ruling on a Rule 12(b)(7) motion may consider materials beyond the pleadings and make factual findings based on them. *See* 5C *Wright & Miller's Federal Practice & Procedure* § 1359 & n.25 (3d ed. 1998) (updated Nov. 2025). Our cases have, albeit implicitly, long recognized district courts' authority to do so. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000); *Gunvor SA v. Kayablian*, 948 F.3d 214, 219 (4th Cir. 2020). Rule 12 itself implies that a district court considering a Rule

7

12(b)(7) motion need not limit itself to the four corners of a complaint. *See* Fed. R. Civ. P. 12(d) (stating that courts must convert only Rule 12(b)(6) and Rule 12(c) motions to motions for summary judgment where "matters outside the pleadings are presented to and not excluded by the court").[1]

Because Rule 12(b)(7) incorporates Rule 19, a motion to dismiss under Rule 12(b)(7) turns on Rule 19's standards. As we have explained, "[w]e review a district court's Rule 19 dismissal for abuse of discretion, reviewing the underlying findings of fact for clear error." *Gunvor*, 948 F.3d at 219; *see also Am. Gen. Life & Accident Ins. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).

## III.

Peterson contends the district court abused its discretion in dismissing his complaint for failure to join TCGE as a defendant. Confining our analysis to Rule 19(a)'s necessity inquiry, we agree. *See Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990) (explaining that if "the threshold requirements of Rule 19(a)" are not satisfied, "no inquiry under Rule 19(b) is necessary").

Rule 19 "sets forth a two-step inquiry for a district court to determine whether a party should be joined in an action." *Nat'l Union Fire Ins.*, 210 F.3d at 249. "First, the

---

[1] We need not decide whether a district court must accept a complaint's factual allegations as true when adjudicating a Rule 12(b)(7) motion. Nor need we decide whether a district court may reject a complaint's factual allegations only after allowing the parties to engage in discovery. The district court here did not make any factual findings that contradict the complaint's allegations. And Peterson's only claim to discovery comes in a cursory footnote in his reply brief. Even there, Peterson does not argue that the district court erred by not allowing discovery. Instead, he argues that the lack of discovery entitles him to rely on the outdated 1996 Management Agreement.

district court must determine whether the party is 'necessary' to the action under Rule 19(a)." *Id.* "[S]econd, if a necessary party is unavailable," the court must determine whether the party is indispensable under Rule 19(b) such that the "proceeding [cannot] continue in that party's absence." *Teamsters Loc. Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 917–918 (4th Cir. 1999). "Neither prong of Rule 19 is to be applied merely as a 'procedural formula.'" *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 951 (4th Cir. 2020) (quoting *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014)). "To the contrary, the decisions must be made pragmatically, in the context of the substance of each case . . . ." *Id.* (internal quotation marks and brackets omitted). The burden of proof is on the moving party—here, Harrah's. *Am. Gen. Life & Acc. Ins.*, 429 F.3d at 92.

"A party might be necessary under either Rule 19(a)(1)(A) or (B)." *Home Buyers Warranty Corp.*, 750 F.3d at 434. Under those subsections, "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party" if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

9

The district court abused its discretion in finding that Harrah's carried its burden to show that TCGE is a necessary party under Rule 19(a).

The court began its analysis by finding that "TCGE was [Peterson's] employer." *Peterson*, 2023 WL 8103163, at \*3; *see also id.* ("TCGE was [Peterson's] true employer."). As noted above, the court was entitled to make this finding.[2]   And given Bridges's declaration stating, among other things, that all the casino employees, save one, were "employees of TCGE" and that TCGE issued Peterson's paychecks, the court's finding was not clearly erroneous.  J.A. 38; *see Nat'l Union Fire Ins.*, 210 F.3d at 250 (reviewing Rule 19 factual findings for clear error).  After all, for purposes of the FMLA, an employer includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer."  29 U.S.C. § 2611(4)(A)(ii)(I).  And under USERRA an employer includes any entity that "pays salary or wages for work performed or that has control over employment opportunities."  38 U.S.C. § 4303(4)(A).

That said, the court's finding that TCGE was Peterson's employer does not resolve whether TCGE is a necessary party to this suit.  As an initial matter, the district court did not find that Harrah's was not *also* Peterson's employer.  Both the FMLA and USERRA allow for the possibility of joint employers.  *See* 29 U.S.C. § 2611(4)(A)(ii)(I); 38 U.S.C. § 4303(4)(A)(i); 29 C.F.R. § 825.106; 20 C.F.R. § 1002.37; *accord Shipton v. Balt. Gas & Elec. Co.*, 109 F.4th 701, 709–710 (4th Cir. 2024); *United States v. Dep't of Health &*

---

[2] Notably, the district court did not find that the evidence disproved Peterson's allegation that Harrah's was his employer.  As we explain, the district court's factual finding that TCGE was Peterson's employer does not necessarily conflict with Peterson's allegation that Harrah's was his employer.

*Env't*, 162 F.4th 1238, 1245 (10th Cir. 2025). And while joint employers can be the equivalent of joint tortfeasors, it is well settled that a joint tortfeasor is "not *ipso facto* [a] 'necessary' part[y] under Rule 19(a)." *Williams v. Martorello*, 143 F.4th 555, 562 (4th Cir. 2025) (citing *Temple*, 498 U.S. at 8); *cf. also* 20 C.F.R. § 1002.37 (recognizing that "both employers share responsibility for compliance with USERRA"); *Grace v. USCAR*, 521 F.3d 655, 668–669 (6th Cir. 2008) (holding that an employee's request for FMLA leave is "sufficient to trigger potential liability for both [joint employers]").

More importantly, the district court's finding that TCGE was Peterson's employer does not necessarily mean that TCGE hired, fired, or controlled Peterson or established any policies relevant to Peterson's claims. The district court did not find that TCGE possessed exclusive authority to hire, fire, or control Peterson, or that Harrah's lacked that authority. And the evidence before the district court would not have supported such a finding.[3] Bridges's declaration was silent on the topic, and Harrah's did not produce the version of the Management Agreement that governed its relationship with TCGE during the period relevant to this case.

We therefore cannot accept the argument, made by Harrah's, that the district court could not "accord complete relief among existing parties" without TCGE. Fed. R. Civ. P.

---

[3] According to the admittedly outdated 1996 Management Agreement that Peterson submitted to the district court, Harrah's possesses "the exclusive responsibility and authority to direct the selection, hiring, training, control and discharge of all employees performing regular services for the Enterprise," who are "employees of the TCGE, but under [Harrah's] supervision." J.A. 144. A more recent version of the Management Agreement says the same. *See Humble v. Harrah's NC Casino Co.*, No. 18-2208, ECF 20 (Joint Appendix), at 313–314 (4th Cir.) (2004 Management Agreement).

11

19(a)(1)(A).  Harrah's has not shown, and the district court did not find, that TCGE was the only entity (or even *an* entity) that could be ordered to reinstate Peterson to his job.  Nor did the district court find that TCGE's presence was necessary for the court to award Peterson monetary damages, regardless of whether those damages are "wage-related" or not.[4]  Resp. Br. 15.  At bottom, the district court's finding that TCGE was Peterson's employer does not automatically make TCGE a necessary party.  And it says very little, if anything, about what the district court could or could not order Harrah's to do in this suit.

The district court concluded that TCGE was a necessary party because "[a]ny judgment on [Peterson's] claims would impair TCGE's contractual interests with [Harrah's] and, thus 'its fundamental economic relationship with the private party . . . .'"  *Peterson*, 2023 WL 8103163, at *3 (quoting *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 553 (4th Cir. 2006)); *see* Fed. R. Civ. P. 19(a)(1)(B)(i).  The district court did not identify what contractual interest would be impaired by this case, and it is not obvious what the court had in mind.  Nor has Harrah's been able to identify a single contractual obligation this lawsuit implicates.  Indeed, Harrah's concedes that the district court did not have the relevant version of the Management Agreement that governed Harrah's relationship with TCGE.  It is difficult to see how, without the contract, the district court

---

[4] The 1996 Management Agreement obligates Harrah's to defend suits brought in connection with the casino and makes litigation judgments an operating expense.  *See* J.A. 152, 164.  A more recent version of the Management Agreement does the same.  *See Humble v. Harrah's NC Casino Co.*, No. 18-2208, ECF 20 (Joint Appendix), at 321, 331 (4th Cir.) (2004 Management Agreement).

12

could assess whether TCGE needed to be joined to this suit so that TCGE could protect its "contractual interests." *Peterson*, 2023 WL 8103163, at \*3.

Throughout its opinion, the district court relied heavily on our decision in *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, to find that this suit is likely to impair TCGE's contractual interests. In that case, Yashenko alleged that Harrah's discriminated against him on the basis of race by "observ[ing] a tribal preference [hiring] policy" written into and required by the management agreement between Harrah's and the Tribe. *Id.* at 552. We held that the Tribe was a necessary and indispensable party for adjudicating Yashenko's challenge to the tribal preference policy because any judgment on that claim "would prejudice the Tribe's economic interests in the Management Agreement," would hinder Harrah's "ability to resolve its contractual obligations with the Tribe," and would leave the Tribe "free to enforce the tribal preference policy." *Id.* at 553.

This case is not like the race discrimination claim in *Yashenko*.[5] *Yashenko* involved a challenge to a tribal policy explicitly embedded in the management agreement between Harrah's and the Tribe. *See id.* at 544, 552–553. Here, by contrast, neither the district court nor Harrah's has identified any contractual provision or tribal policy implicated by Peterson's claims. *See McKiver*, 980 F.3d at 951 (distinguishing *Yashenko* on the ground that it "involve[d] a situation where the contract[] . . . of the 'necessary' party [was] being interpreted or [was] otherwise directly at issue"). And the record does not contain a copy

---

[5] Yashenko also sued Harrah's for violations of the FMLA. Without any discussion of joinder, this Court adjudicated the merits of the FMLA claims and concluded that Harrah's did not violate Yashenko's rights. *See* 446 F.3d at 546–551.

13

of the governing Management Agreement. Without that, or any other pertinent information, it is unclear whether a judgment in Peterson's favor would implicate TCGE's contractual interests at all. The district court's reliance on *Yashenko* was therefore misplaced.

In sum, the district court's Rule 19 analysis rested on speculative assertions and unsupported assumptions, making its decision an abuse of discretion.[6] *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) (explaining that a district court abuses its discretion where it "relie[s] on faulty legal or factual premises"). Harrah's had the burden to prove that TCGE is a necessary party to this lawsuit, and it failed to do so. To be sure, Harrah's can raise a Rule 19 objection again later in the litigation, and the district court can revisit the issue on a more complete record. *See* Fed. R. Civ. P. 12(h)(2). The current record, however, does not support the district court's dismissal.

## IV.

For the foregoing reasons, we vacate the district court's dismissal of Peterson's complaint and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

[6] As a final reason for its necessity holding, the district court said that "excluding TCGE from this litigation would put *TCGE* in jeopardy of incurring multiple, and possibly inconsistent, obligations." *Peterson*, 2023 WL 8103163, at *3 (emphasis added). Rule 19(a)(1)(B)(ii), however, asks whether a judgment without the absent party would "leave *an existing party* subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." (emphasis added). TCGE is not an "existing party."

14